[S. F. No. 13755.  In Bank.—December 31, 1930.]

VENTURA COUNTY HARBOR DISTRICT (a Public Corporation and Body Politic), Petitioner, v. THE BOARD OF SUPERVISORS OF THE COUNTY OF VENTURA et al., Respondents.

Heaney, Price & Postel and Harold A. Parma for Petitioner.

Farrand & Slosson and Ross C. Fisher, *Amici Curiae,* for Petitioner.

James C. Hollingsworth, District Attorney, and Don R. Holt, Deputy District Attorney, for Respondents.

J. M. Mannon, Jr., Edwin S. Pillsbury and McCutchen, Olney, Mannon & Greene, *Amici Curiae,* for Respondents.

· Walter J. Fourt, City Attorney, Blackstock & Rogers, Merle J. Rogers, L. C. Drapeau and Sheridan, Orr, Drapeau & Gardner, *Amici Curiae,* for City of San Buenaventura.

PRESTON, J.—The petitioner, asserting itself to be a public corporation created by special act of the legislature (Stats. 1927, p. 1819), seeks to compel respondent Board of Supervisors of the County of Ventura, to call a special

election in said district under said act to vote upon the proposition of incurring a bonded indebtedness of two million dollars, to be used in constructing and maintaining a land-locked harbor at a place called Hueneme in said county.

Issue is made by demurrer and answer to the petition, supported by a stipulation of facts. Respondent, in refusing to comply with the demand of petitioner, attacks the validity of said special act. Secondly, assuming the act to be valid, respondent alleges failure of petitioner to faithfully follow certain jurisdictional steps requisite for calling the said election. Numerous questions of both types are elaborately briefed and argued both by the respective parties and numerous *amici curiae* as well. ▉ But we have been led to a conclusion upon one of the constitutional questions which disposes of the entire case; hence a consideration of the other matters urged becomes unnecessary.

The provisions of the Constitution involved are: Article I, section 11, which reads: "All laws of a general nature shall have a uniform operation"; and article IV, section 25, subdivision 33, which reads: "The Legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . Thirty-third—In all cases where a general law can be made applicable."

The facts necessary to a discussion of said question are: There are three statutes in existence relating to harbor development by the district assessment plan. Two are of general application; the third is the special act here under consideration. The first Harbor Act was passed in 1915 (Stats. 1915, p. 1459), amended in 1921 (Stats. 1921, p. 1314). This act applies to all counties wherein a harbor exists and provides for "the improvement, development or protection of any harbor, bay, inlet, or other arm of the sea, existing within any county of this state"; then follows a line of procedure for the organization of a harbor district, voting upon a bond issue, construction of the development works and management of same. It is not necessary to our inquiry to set forth these steps in detail, but it should be noted that this act is known as a county harbor improvement act and the bond issue is a lien upon the property of the whole county and the project was to be managed by the

board of supervisors unless a state board of harbor commissioners was in existence authorized to manage and control same.

In 1927 the legislature passed another General Harbor District Act, approved April 20, 1927, effective July 29, 1927 (Stats. 1927, p. 362), which provides that "any portion of a county in this state, the exterior boundaries of which include a bay, harbor, or inlet of the Pacific ocean, may be formed into a harbor district for the improvement or development of such harbor, upon proceedings being had and taken as provided for in this act". The word "harbor" is therein defined as follows: "The word 'harbor' means any bay, harbor, inlet, or other arm of the sea in which the tides of the Pacific ocean ebb and flow." Section 3 of the act provides that the improvement and development work proposed to be done in the harbor "may include the dredging of channels, shipways, ship berths, anchorage places and turning basins, the construction of jetties, breakwaters, bulkheads, seawalls, wharfs, ferry slips, and warehouses . . . "

The act further provides that the organization of the district may be set in motion by a petition signed by fifty or more persons of the county who are registered voters, residents and freeholders within the proposed harbor district, which petition shall pray for the organization of a harbor district; shall specify the harbor to be improved or developed, the nature of the work to be done; shall describe the boundaries of the proposed district and shall be filed with the board of supervisors of the county in which the district is located. Publication of the petition is then provided for and also hearing thereof by the board of supervisors. Power is vested in the board of supervisors to change the exterior boundaries of the proposed district by excluding therefrom such lands as in its judgment would not be benefited by the improvement or development of the harbor and to include therein such other contiguous lands as in its judgment would be benefited thereby.

It further provides that if the owners of more than ten per cent of the lands to be included shall object to having their lands so included, no further proceedings shall be had until the boundaries of the proposed district shall have been changed to exclude said lands. It provides also for notice

to the owners of the lands proposed to be added to said district. After a consideration of the feasibility of the project and whether the cost thereof is proportionate to the benefits to be derived therefrom, the board may call an election, and submit to the voters a proposal to form the district and incur the necessary bonded indebtedness to carry out the improvement. If the proposition carries by a majority vote, the district is formed and the bonds authorized may be issued and sold by the board of supervisors. Further steps provided for in the act need not be here recited except to say that the assessment upon the said district covers all classes of property, real and personal, located therein.

It should here be noted also that before the respondent was required to act in the present case, the said General Harbor Act of 1927 was amended (Stats. 1929, p. 817), so as to make section 1 of said act read as follows: "Any portion of a county in this state, the exterior boundaries of which include a bay, harbor, inlet or navigable water of the Pacific ocean, may be formed into a harbor district for the improvement or development of such harbor, upon proceedings being had and taken as provided for in this act." This amendment made it doubly sure that a harbor might be located, constructed or developed under this act at any point in the state bordering upon the navigable waters of the Pacific Ocean.

The legislature, however, on June 1, 1927, approved an act effective July 31, 1927, called the "Ventura County Harbor District Act" (Stats. 1927, p. 1819). This is the act under which petitioner is attempting to proceed. It creates a district out of practically the whole of Ventura County, excepting alone two islands and a national forest reserve therein, and it has for its purpose "to provide for the location, development, improvement and protection of a harbor on the coast of the Pacific ocean in said Ventura county and within said district including the construction, operation, and maintenance of said harbor . . . "

The peculiar feature about this district is that its boundaries are inflexible and fixed by law, no method being allowed for testing the question as to whether or not any land owner therein is benefited by the improvement. It also provides that a harbor commission of sufficient members be

appointed who shall ascertain "the best, most feasible and practical plan and system for the location, improvement, development and protection of a harbor on said coast". It further provides that the bonds to carry the plan into execution shall become a lien upon the taxable real property only in said district, excluding all other classes of property assessment for liabilities of the district. The remaining provisions of the act are not necessary to relate.

It is plain, therefore, from the above recital of facts that under either of the general laws above referred to and particularly under the latter one the proposed improvement could have been carried out. It also appears that it would be more consonant with justice and equity that the general plan be followed rather than the special act for the general act is more flexible and allows the property owner a chance to be heard as to whether or not it is proper to include his property within the said district. It is also preferable because the assessments may be provided for from personal as well as real property of the district which is not the case in the special act.

This brings us to a consideration of the above quoted sections of the Constitution. Is it possible that the special act and the general acts may all stand? Is it not true that either the general law is invalid because it lacks uniformity of operation or the special act is invalid because it is a case where a general law may be made applicable? No conceivable reason exists for any lack of uniformity to result from operation of the general laws alone. Every purpose of the special law may be obtained by invoking the one, if not both, the general acts. It seems clear to us that if the legislature itself defines, declares and puts in operation a general law upon a subject, the courts can do nothing less than apply the constitutional provisions quoted and declare the special act invalid under the mandatory provisions of the Constitution.

In coming to this conclusion, we have in mind, of course, that there is a presumption that public officers have discharged their duties properly and that every act of the legislature is valid until there is a judicial determination to the contrary. We realize also that in the first instance the

question as to whether or not a special act can be made applicable is addressed to the legislature and that unless we can see from the face of the act or from facts of which we take judicial cognizance that the case is one in which a special act may not be passed, we will uphold the validity of such legislation. But these presumptions do not aid us where, as here, the legislature itself has by its own solemn act, declared that a general act may be passed covering the subject matter contained in the special act. We then have the legislature itself deciding that a general statute is applicable to the subject covered by the special act.

This court, of course, will take judicial knowledge of the existence of the general act and its terms and judicial knowledge of facts appearing on the face of the special act and judicial knowledge of those matters of common knowledge and observation taught by the experience of mankind and when these matters are considered, we must either declare the question a legislative one or else assume the responsibility of declaring it to be a judicial one and holding the act invalid by reason of the undisputed facts of which we take judicial knowledge. Although great deference must be shown to the implied findings of a co-ordinate branch of the government, still in its last analysis, this question is a judicial one.

In making this holding we are not unmindful of the case of *People* v. *Mullender,* 132 Cal. 217, 222 [64 Pac. 299, 301], wherein the court had under consideration a special act relating to the improvement of the harbor of San Diego and where against the claim that it was special legislation, the court said: ''The act in question, if made general, could apply only to the harbors within the state. These are of different size and importance, and we may well assume that the legislature determined that laws suitable and adapted to one would not be suitable nor adapted to the others, or to any of the others. There would seem to be the same necessity for diversity of laws and regulations for the different harbors that exist in the case of cities and counties; but the constitution has not directed the classification of harbors, nor would their classification at all simplify or diminish the legislation required.''

But it must be observed that at that time there was in existence no general law upon the subject and the court presumed that the legislature had before it the facts which made it impractical to pass a general law covering the subject matter and by reason of the indulgence of this presumption, it declared the act valid and it may be here said that were the special act under consideration alone all the legislation upon the subject, we might be disposed to indulge the same presumption, but, as above stated, where the legislature has spoken, the matter does not rest upon presumption but upon the open facts which show that the general law is valid and the special act is therefore invalid.

We might also say that a special law creating a drainage district has been declared valid, there being no general law on the subject (*People* v. *Sacramento Drainage Dist.*, 155 Cal. 373 [103 Pac. 207]) ; that a special act creating a flood control district has also been upheld (*Los Angeles C. F. C. Dist.* v. *Hamilton*, 177 Cal. 119 [169 Pac. 1028]), and other similar statutes have been upheld but in no instance have we found that, where a general law fully applicable and complete on the subject is in existence, a special law has been upheld.

As authority for a contrary holding to the one here announced, counsel cite us two other cases: *Wheeler* v. *Herbert*, 152 Cal. 224 [92 Pac. 353] ; *Reclamation Dist. No. 1500* v. *Superior Court*, 171 Cal. 672 [154 Pac. 845]. We regard the first case as distinctly in favor of and not opposed to our conclusion. There it is recited that new counties had been uniformly created by special act prior to the constitutional amendment of 1894 requiring it to be done by general law—and it was later done by such an act. In that case, however, a special act was passed altering the boundary between the counties of Fresno and Kings. This, the court held, was a different matter from the creation of a county. The holding is simply that until it is demonstrated that a general law can be made applicable, the courts will presume the special act had sufficient facts to support it, as it theretofore did as to counties. The other case simply holds that inasmuch as drainage districts had uniformly been held to be a proper subject for special legislation, such legislation could coexist with a general law on the subject. Here, as

above set forth, we are to consider the propriety of having the subject of harbor development provided for by special law. In other words, the citation of this case seems to beg the question here before us.

Authority for the holding we here make is not wanting. In the case of *Pasadena* v. *Stimson,* 91 Cal. 238 [27 Pac. 604, 606], plaintiff city sought to condemn a right of way for a sewer. Defendant appealed from the decree of condemnation and raised the point that Pasadena, being a city of the sixth class, was required under the law to make an effort to agree with property owners before commencing eminent domain proceedings, which it had not done. The same sections of the Constitution here quoted were there invoked and in disposing of the question the court said: "It seems to us perfectly clear that the clause of the incor-. poration act requiring cities of the fifth and sixth classes to make an effort to agree, while all other persons are exempt from such condition, is in plain and direct conflict with both of these constitutional inhibitions. It destroys the uniform operation of a general law, and is special in a case where a general law not only can be made applicable, but in which a general law had been enacted, and in which there is no conceivable reason for discrimination."

In *Cullen* v. *Glendora Water Co.,* 113 Cal. 503 [39 Pac. 769, 45 Pac. 822, 1047], an act was declared invalid which provided special procedure for seeking new trials in proceedings for the confirmation of irrigation districts, a procedure different from that prescribed in the Code of Civil Procedure. The court approved the language above quoted from the case of *Pasadena* v. *Stimson, supra.*

In *Krause* v. *Durbrow,* 127 Cal. 681 [60 Pac. 438], an act providing for a special mode of conducting the election of mining corporation directors was declared invalid upon the same line of reasoning.

In *Pratt* v. *Browne,* 135 Cal. 649 [67 Pac. 1082], a special act fixing the salaries of official reporters in counties of the thirtieth class was held void because of a general law on the subject fixing their compensation.

In *In re Raleigh,* 177 Cal. 746 [171 Pac. 950], a special act which purported to except from the real estate brokers'

license law, a certain class of individuals was held unconstitutional.

In *Mordecai* v. *Board of Supervisors,* 183 Cal. 434 [192 Pac. 40], the California Irrigation Act of 1919 was held unconstitutional because it excepted from its operation any district wholly or in part within a county of the state which had prior to a certain date adopted a freeholders' charter under the Constitution.

In fact, in the recent case of *Mojave River Irr. Dist.* v. *Superior Court,* 202 Cal. 717, 727 [262 Pac. 724, 728], this court held unconstitutional a special provision of the Water Commission Act providing that a party interested in the application before the water commission should have the right to commence an action in the superior court for the review of an order granting or denying such application. The court held the provision unconstitutional in these words: "The inhibition of the Constitution against special enactments regulating the practice and procedure in courts of justice is further enforced by the subsequent clause in the same section of the Constitution, which forbids the legislature to enact local or special laws upon any subject 'where a general law can be made applicable'. (Const., subd. 33, sec. 25, art. IV.) We have been pointed to no reason why a general law could not be made applicable to the situation presented by the amendment under review, nor, in fact, why the general laws of the state already in existence are not entirely adequate to deal with the controversies of those who are claiming or seeking to exercise conflicting rights in or to the use of waters of the state."

Petitioner asserts that in view of the presumption that both the general and special statutes are valid and may operate together and in view of the presumption that the special act controls the general act, we are thereby required to declare the special act valid. As above noted, these presumptions referred to by counsel are proper in a case where the right to legislate both generally and specially upon a subject exists but are inapplicable to a case like the present where we are testing the question as to whether or not there is room for the operation of a special act in view of the existing general law. Our conclusion is that the special act of 1927 above discussed is inoperative and void.

We deem this a disposition of all the questions raised and it follows that the alternative writ of mandate is hereby discharged and the petition denied.

Shenk, J., Richards, J., Curtis, J., Waste, C. J., and Seawell, J., concurred.