[S. F. No. 14466. In Bank.—February 5, 1932.]

AMERICAN RIVER FLOOD CONTROL DISTRICT, Petitioner, v. A. W. SWEET, as President, etc., et al., Respondents.

Downey, Brand & Seymour for Petitioner.

Morgan V. Spicer for Respondents.

SHENK, J.—This is an application for a writ of mandate to compel the respondents, who are the president and treasurer respectively of the petitioner district, to sign and countersign certain bonds authorized to be issued and sold by the district.

The petitioner, American River Flood Control District, came into being and is functioning by reason of a special act of the legislature (Stats. 1927, p. 1596; amended, Stats. 1929, p. 861).

Prior to June 4, 1931, the petitioner caused the necessary surveys, drawings and plans to be made and prepared under the direction of the engineer of the district to provide a basis for the district board to estimate and determine the amount of money necessary to be raised for the purpose of purchasing or constructing the necessary flood control works and acquiring the necessary property and rights therefor, and otherwise carrying out the provisions of the act of its creation. On said fourth day of June, 1931, the board of trustees of the district adopted the engineering report, passed upon its feasibility and determined the amount of money required to carry the project into effect. On September 15, 1931, an election was held in the district at which the necessary bonds were authorized to be issued and sold.

██ It is conceded that all of the steps necessary to be taken under the act have been duly and regularly taken. The only question presented is whether the act under which they were taken is valid in view of the provisions of arti-

cle IV, section 25, subdivision 33, of the Constitution, which declares that the legislature shall not pass local or special laws in "cases where a general law can be made applicable".

It appears that the occasion for raising the point was the rendition by this court of the opinion and judgment in the case of *Harbor District* v. *Board of Supervisors*, 211 Cal. 271 [295 Pac. 6], wherein it was held that the "Ventura County Harbor District Act" (Stats. 1927, p. 1819), was invalid as in contravention of the above-quoted constitutional provisions. ██ However, it was recognized in that case, and necessarily so, that special legislation might coexist with a general law on the subject, and that it would be deemed a valid exercise of legislative power until it is demonstrated that a general law could be made applicable.

The respondents contend that the general statute of 1905, providing for the formation of levee districts (Stats. 1905, p. 327, as amended; Stats. 1907, p. 333; Stats. 1917, p. 824), and sections 3446 to 3493, inclusive, of the Political Code, providing for the formation of reclamation districts, furnish all the legal machinery necessary to permit the petitioner to organize and function for the purposes specified in the act.

██ Assuming that a district might be formed under the foregoing general laws which would be authorized to construct works for protection from flood waters and for reclamation, as provided in the general provisions of such laws, it cannot be said that the legislature was without power to determine that the particular situation confronting it was not adequately provided for thereunder, for several reasons.

██ First, the general law is permissive only. The initiation of proceedings for the formation of such districts under general law must depend on the voluntary petition of land owners in the district. The land owners in the district might never file, or might indefinitely delay the filing of, such a petition. Here the district is created by the special act. It has no alternative but to function and carry out the purposes of the act. The act contemplates the safeguards of life and property in the cities of Sacramento and North Sacramento from danger and depredation by floods at the confluence of the American and Sacramento Rivers. It contemplates upstream storage of water, the establishment of zones for the assessment of property specially benefited,

and is a definite step in compliance with the contract with the federal government looking to the control of the flood waters of the American and Sacramento Rivers. The project contemplated by the act is one of the essential parts of the co-ordinated plan for "controlling flood waters of the Sacramento and San Joaquin rivers and their tributaries, for the improvement and preservation of navigation, and the reclamation and protection of lands that are susceptible to overflow from said rivers", promulgated by the commission of federal engineers known as the California Debris Commission and transmitted to the Speaker of the House of Representatives by the Secretary of War on June 27, 1911, as modified by the report of the same commission on January 5, 1925. (See House Document No. 81, Sixty-Second Congress, first session; Senate Document No. 23, Sixty-Ninth Congress, first session, pp. 27, 31, 32, 33, 35.) The report of June 27, 1911 (House Document No. 81), was approved as the plan of the state of California for the purposes above outlined and adopted by the legislature of this state (Stats. 1911, Ex. Sess., p. 117), and was approved in part by act of Congress in 1917 (U. S. Stats. at Large, vol. 39, p. 948). The federal act made certain appropriations in aid of the plan provided for by the act here in question, conditioned, among other things, on assurances that appropriations would be made by the state of California, and that the river levees contemplated by the plan (among others, levees along the American and Sacramento Rivers) would "be constructed to such grade, cross-section, and within such time" as the California Debris Commission should require. The plan of the California Debris Commission thus became part of the law of this state, and the United States and the state of California are substantially under contract with respect to it. (See *Gray* v. *Reclamation Dist. No. 1500,* 174 Cal. 622 [163 Pac. 1024]; *Miller & Lux* v. *Sacramento & S. J. D. Dist.,* 182 Cal. 252 [187 Pac. 1041]; *In re Sutter-Butte By-Pass No. 6,* 191 Cal. 650 [218 Pac. 27]; *Reclamation Dist. No. 1500* v. *Riley,* 192 Cal. 147 [218 Pac. 762]; *Sacramento & S. J. D. Dist.* v. *Riley,* 199 Cal. 668 [251 Pac. 207]; *Reclamation Board* v. *Riley,* 208 Cal. 661, 685 [284 Pac. 668].)

In 1925 the state of California approved a modified report of the California Debris Commission dated January 5, 1925,

providing for additional participation in this project on the part of the state. (Stats. 1925, p. 325; Senate Document No. 23, Sixty-Ninth Congress, first session, pp. 38–44h.) Congress in 1928 then likewise approved the modified report of January 5, 1925 (U. S. Stats. at Large, vol. 45, p. 534, sec. 13), and subsequently made appropriations to carry it out (U. S. Stats. at Large, vol. 45, pp. 1349, 1381).

The petitioner was therefore created for the purpose of carrying out that portion of the plan of the California Debris Commission relating to the American River overflow menacing Sacramento, North Sacramento and contiguous areas, in material respects the same as the creation of Reclamation District No. 1500 and other districts, to carry out other portions of the general plan. (See *Reclamation Dist. No. 1500* v. *Superior Court*, 171 Cal. 672 [154 Pac. 845].) The California Debris Commission has under appropriation the sum of $135,000 for participation in the work contemplated by the act. The reclamation board has available the sum of $175,000 for the same purpose, and the sum of $565,000 represents the participation of the local interests in the project. The latter amount is to be raised by the bond issue involved herein.

The foregoing facts and circumstances peculiar to the formation of the petitioner district would seem without further showing to demonstrate that the problem was and is local and special in character and that the legislature was justified in treating it as such.

In addition it may be noted that since the early days of California down to the most recent decisions of this court, it has been held consistently, and without any departure, that districts formed for reclamation purposes, districts formed for protection from flood waters, levee districts, drainage districts and the like may be created by special law. The petitioner's brief refers to some thirty-six of said special acts, beginning with Levee District No. 1, Sutter County (Stats. 1867–68, p. 316), and concluding with Orange County Flood Control District (Stats. 1927, p. 1325). The present act was modeled after the act creating the Los Angeles County Flood Control District (Stats. 1915, p. 1502), which was declared valid in *Los Angeles County Flood Control District* v. *Hamilton*, 177 Cal. 119 [169 Pac. 1028]. In the last case cited the opinion does

not pass specially on the question of whether the act was obnoxious to the constitutional provisions relied upon by the respondents, but the point was made in the briefs and was dismissed without discussion doubtless because the court considered it wholly lacking in merit in view of the twenty-four or more cases decided by this court, cited in the briefs, where special legislation such as the act here in question was upheld. No further discussion is necessary.

Let the peremptory writ issue as prayed.

Seawell, J., Preston, J., Langdon, J., Curtis, J., and Waste, C. J., concurred.