[Civ. No. 19069. Second Dist., Div. Three. May 20, 1952.]

SOLVANG MUNICIPAL IMPROVEMENT DISTRICT (a Public Corporation), Petitioner, v. ARDEN T. JENSEN, as District Secretary, Respondent.

Kirkbride, Wilson, Harzfeld & Wallace for Petitioner.

Arden T. Jensen, in pro. per., for Respondent.

SHINN, P. J.—The present proceeding is an application for a writ of mandate. The facts are set forth in an agreed statement. The application was filed with the Supreme Court and transferred to this court.

Solvang Municipal Improvement District, a public corporation, was created by special act of the Legislature (Stats. 1951, ch. 1635) and was duly organized. Proceedings were had for the issuance of district bonds. The district seeks a writ of mandate commanding respondent Jensen, as secretary of the district, to publish notice of sale of certain bonds of the district in the manner directed by its board of directors. The application is resisted upon the ground that the district was created by special act of the Legislature in contravention of constitutional limitations, and is an illegal entity. We shall refer to the act as the Solvang Act.

■ Mandate is a proper remedy. (*In re City & County of San Francisco,* 195 Cal. 426, 429 [233 P. 965]; *Dufton* v. *Daniels,* 190 Cal. 577, 581 [213 P. 949]; *Hartsock* v. *Merritt,* 93 Cal.App. 365 [269 P. 757].) Original jurisdiction has frequently been exercised by the upper courts in proper cases of this nature. (*City of Grass Valley* v. *Walkinshaw,* 34 Cal.2d 595 [212 P.2d 894]; *Ventura County Harbor Dist.* v. *Board of Supervisors,* 211 Cal. 271 [295 P. 6]; *In re City & County of San Francisco, supra; Los Angeles County Flood Cont. Dist.* v. *Hamilton,* 177 Cal. 119 [169 P. 1028].)

The obvious purpose of the proceeding is to obtain a judgment establishing the validity of the district and its right to issue bonds. Section 97 of the act authorizes the district to bring an action in the superior court to obtain such a judgment. The present proceeding was instituted in the hope that some time would be saved in bringing the proceeding to final judgment.

Article IV, section 25, subdivision 33, of the Constitution provides: "The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: [33rd] In all other cases where a general law can be made applicable." The act which created petitioner, being a special law, is a valid enactment if there was no general law which could be made applicable to accomplish the purposes of the special law. This is the sole question for decision.

There are existing in the area a sanitary district, a fire district and a lighting district, all of which under the Solvang Act are consolidated and merged with the new district (§ 40).

The powers of the district are enumerated as follows: "The district may acquire, construct, reconstruct, alter, enlarge, lay, renew, replace, maintain, and operate street and highway lighting facilities and facilities for the collection, treatment and disposal of sewage, industrial wastes, storm waters, garbage and refuse; the production, storage, treatment and distribution of water for public and private purposes; and fire departments and facilities." (§ 43.) Sections 210 and 211 of the act read as stated in margin.[1]

---

[1] "Sec. 210. The purpose of this act is to form the Solvang Municipal Improvement District in order that the area benefited may be provided with various municipal improvements; special facts and circumstances, applicable to the area in which the district lies and not generally, make the accomplishment of this purpose impossible under existing general laws and therefore special legislation is necessary. The special facts are as follows:

"(a) The area has no facilities for the treatment and disposal of sewage and is consequently contaminating the waters of the State.

"(b) The area is without an adequate water supply, storage, and distribution system for public and private purposes.

"(c) There is urgent need for the municipal improvements which the district is empowered to construct under this act, but other municipal powers which could be exercised by a city are not required, and would result in more government than the area needs or wants. There are no existing general laws under which the area could be provided with the facilities it needs short of incorporation as a city. Therefore, the only way in which the particular needs of the area can be provided is by special act.

"(d) The existing districts are performing sewage, fire protection, and lighting functions. Their administration under a single governing body will result in economies of administration which cannot be obtained by continued unit functioning.

"(e) The area is of strategic importance during times of war or threatened war. Its local airport is strategically located midway between the military and air installations at Santa Maria and at Santa Barbara. Influx of military men and their families during times of war or threatened war greatly increases the necessity of providing municipal facilities.

"Sec. 211. This act is an urgency measure necessary for the immediate preservation of the public peace, health, and safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting such necessity are:

"Water pollution and the providing of water for domestic and fire protection purposes are critical problems in the proposed district. State and local health authorities are agreed on the urgent need for immediate sewage treatment and water facilities in the area if a serious health condition is to be avoided. Inadequacy of existing law makes it necessary that this legislation take immediate effect so that necessary facilities may be provided."

(It is conceded that the act cannot be given effect as an emergency measure for the reason that it creates offices consisting of memberships on the board of directors. (See art. IV, § 1, par. 4.))

■ The recitals of section 210 are determinations of fact as to the conditions which required the organization of an improvement district. Such recitals, if not contrary to facts that are of common knowledge, will be deemed conclusive by the courts. (*People* v. *Sacramento Drainage Dist.*, 155 Cal. 373 [103 P. 207] ; *Ventura County Harbor Dist.* v. *Board of Supervisors*, 211 Cal. 271 [295 P. 6].) ■ It is a judicial question whether existing general laws could have been made applicable to accomplish the purposes of the special law, but the declaration that creation of the district by special law was the only alternative to incorporation as a city should not be ignored. It is evidence of the fact that the Legislature was influenced by considerations which, as we shall see, fully justified the special legislation.

Historically, the Legislature has exercised the power to create improvement and protection districts by special laws when it was deemed necessary in order to accomplish purposes that could not be accomplished through the use of existing general laws. An urgent need for furnishing necessary facilities in a particular situation has been held to be a sufficient reason for the creation of a district by special law, even though in other respects the facilities could be provided by proceedings under general laws. (*American River Flood Control Dist.* v. *Sweet*, 214 Cal. 778 [7 P.2d 1030] ; *Monterey Peninsula Airport Dist.* v. *Mason*, 19 Cal.2d 446 [121 P.2d 727].)

At the time the Solvang Act was passed there were two general laws under which a district could have been organized: one was the Public Utility District Act of 1921, Stats. 1921, page 906, as amended, 2 Deering's General Laws, Act 6391; the other was the Municipal Corporation Act of 1883, Stats. 1883, page 93, as amended, now sections 34300 et seq., Government Code. A district organized under the former act would have had not only the powers granted to the Solvang District, but also power to acquire, construct, own, operate and use works for supplying light, power, heat, transportation, telephone service and other means of communication, public parks, public playgrounds, public swimming pools and public recreation buildings and buildings to be used for public purposes and the use of the district (§ 30). The powers of a city would be even more extensive.

The sole contention of the respondent is that the Solvang District should have been organized under one or the other

of these general laws. The contention is without support in authority or reason.

It clearly appears from the face of the act that there is pressing need for the public improvements which the district proposes to provide. The people of the area wished to organize a district with limited powers. If they had desired to incorporate as a city, or as a utility district, they would have done so. ▮ Proceedings under either of the general laws are permissive. They require petitions signed by percentages of the voters or landowners, and elections at which a majority vote is required to carry the propositions. In considering the propriety of creating the Solvang District by special act the Legislature no doubt was influenced by the fact that the landowners and voters of the area were evidently averse to both the utility district and city forms of government, and might not adopt either. This has been recognized as a good reason for the creation of an improvement district by special act, where there was imperative need for local public improvements or facilities. (*American River Flood Control Dist.* v. *Sweet*, 214 Cal. 778, *supra*; *Monterey Peninsula Airport Dist.* v. *Mason*, 19 Cal.2d 446, *supra*.) The special act authorizes the facilities which the district needs. Incorporation under the general law would give the residents a form of government which they do not need and do not want. Special legislation in this situation has none of the evils against which the Constitution affords protection. Upon the contrary, it was the only means by which the requirements and the desires of the people in the area could be satisfied. That they are satisfied is attested by the fact that the vote was 205 to 28 in favor of the issuance of revenue bonds in the amount of $250,000 for the establishment of water and sewage facilities. No action by the Legislature could have been more consistent with the proper exercise of its powers than to give the district the form of district government the people asked for.

Respondent has cited no authority which is opposed to the views we have expressed. Such cases as *City of Pasadena* v. *Stimson*, 91 Cal. 238 [27 P. 604], *Mojave River Irr. Dist.* v. *Superior Court*, 202 Cal. 717 [262 P. 724], and *Ventura County Harbor Dist.* v. *Board of Supervisors*, 211 Cal. 271, *supra*, do not aid respondent. They all dealt with factual situations in which proceedings under the general laws would have been adequate and there was no conceivable reason for special legislation.

It appears from the record that the district has been duly organized and that steps have been duly taken to put out a bond issue. Petitioner was created by a valid act of the Legislature and has the right to issue the proposed bonds. Let the writ issue.

Wood (Parker), J., and Vallée, J., concurred.