[Civ. No. 16008.   First Dist., Div. One.   Nov. 17, 1953.]

ALAMEDA COUNTY FLOOD CONTROL AND WATER
CONSERVATION DISTRICT, Petitioner, v. CHESTER
E. STANLEY, as Chairman of the Board of Supervisors,
etc., Respondent.

J. F. Coakley, District Attorney (Alameda), R. Robert Hunter, Chief Assistant District Attorney, Richard J. Moore and Maury Engel, Deputy District Attorneys, for Petitioner.

Hubert W. Bryant for Respondent.

BRAY, J.—Petition for a writ of mandate to compel respondent to execute bonds of the Alameda County Flood Control and Water Conservation District.

## QUESTION PRESENTED

The validity of the bonds, dependent upon the constitutionality of the special act creating said district.

## RECORD

Respondent has demurred to the petition on the ground that the act creating the district is unconstitutional as being special legislation prohibited by the California Constitution. The pertinent facts set forth in the petition follow. The district is a body corporate and politic of the state, organized and existing under the "Alameda County Flood Control and Water Conservation District Act." (Stats. 1949, ch. 1275, p. 2240 (1 Deering's Gen. Laws, Act 205, 1949 Supp.) as amended, Stats. 1953, ch. 149, p. 920.) Pursuant to the act the district caused Zone No. 2 of said district to be formed (an area covering only a portion of the county—the district is county wide), and thereafter, on June 9, 1953, a special bond election was duly held in said zone. The electors by a two-thirds majority authorized the creation of a bonded indebtedness for said zone of $6,954,000. August 11, 1953, the board of supervisors of the district pursuant to the provisions of section 14 of said act, by a vote of three to one, respondent voting no, ordered the execution, issuance, sale and delivery of "Alameda County Flood Control and Water Conservation District Zone No. 2 Bonds, Issue of 1953, Series A" in the principal sum of $1,000,000. Respondent has refused to sign said bonds on the alleged ground of the unconstitutionality of the act. The petition states that flood control protection in said Zone No. 2 is urgent and necessary for the preservation of the public peace, health and safety, and that the district has no funds with which to carry on the needed work; that the Legislature declared in an amendment to said act the urgency of flood control work in said district and its necessity. It is then alleged that an urgent necessity exists for such work and that the estimated flood damage in the district last rainy season amounted to $1,870,000; that at the time of the adoption of said act no law was available for the creation of such a district except by certain general laws which are unavailable and inapplicable to accomplish the special needs of the district.

## Does the Act Violate Article IV, Section 25, Subdivision 33, California Constitution?

That section provides, in part: "The Legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . Thirty-third—In all other cases where a general law can be made applicable." Respondent contends that there are general laws applicable to the formation of a county district of this type: A general act, Stats. 1931, ch. 641, p. 1369 (3 Deering's Gen. Laws, Act 9178) as amended by Stats. 1949, ch. 144, which provides for the formation in any county of a flood control and flood water conservation district; the general powers given boards of supervisors by Government Code, sections 25680 to 25684, inclusive, especially section 25680; and by section 8110 of the Water Code.

Respondent relies primarily upon *Ventura County Harbor Dist.* v. *Board of Supervisors,* 211 Cal. 271 [295 P. 6], which held unconstitutional the special act creating that *harbor* district on the ground that every purpose of the special law might be obtained under one, if not both, of two general laws dealing with harbor districts. However, that very case was considered in *American River Flood Control Dist.* v. *Sweet,* 214 Cal. 778 [7 P.2d 1030], where the court upheld the constitutionality of the act creating that district, an act which is a prototype of the one considered here. There the respondent, as does the respondent here, relied upon the Ventura County Harbor District case. The court pointed out (p. 780) : "However, it was recognized in that case, and necessarily so, that special legislation might coexist with a general law on the subject, and that it would be deemed a valid exercise of legislative power until it is demonstrated that a general law could be made applicable." In the American River case, after referring to certain general laws concerning the formation of levee and reclamation districts, the court said (p. 780) : "Assuming that a district might be formed under the foregoing general laws . . . it cannot be said that the legislature was without power to determine that the particular situation confronting it was not adequately provided for thereunder, for several reasons.

"First, the general law is permissive only. The initiation of proceedings for the formation of such districts under general law must depend on the voluntary petition of land owners in the district. The land owners in the district might never file, or might indefinitely delay the filing of, such a petition.

Here the district is created by the special act. It has no alternative but to function and carry out the purposes of the act.''

In *Los Angeles County F. C. Dist.* v. *Hamilton*, 177 Cal. 119 [169 P. 1028], the court upheld the constitutionality of the act creating the district. As to the contention that the act violated subdivision 33, the court stated (p. 130) that that and other contentions were fully met by the discussion and citations of authority in its opinion. In the American River case, *supra,* the court said that the reason the opinion in the Hamilton case did not pass specially upon the question of whether the act was obnoxious to subdivision 33 was that the court considered the contention ''wholly lacking in merit in view of the twenty-four or more cases decided by this court, cited in the briefs, where special legislation such as the act here in question was upheld.'' (P. 783.)

Respondent contends that neither the American River nor the Los Angeles case, *supra,* which are the only ones dealing specifically with flood control and water conservation districts created by special act, is authoritative now because at the time of their decision the general law, 3 Deering's Act 9178, was not in existence. This brings us to a consideration of whether the general law is ''fully applicable and complete on the subject . . .'' (Harbor Dist. case, *supra,* p. 278.)

■    In considering the subject we must bear in mind that the Legislature is vested with a very wide discretion in exercising its power to classify (*Sacramento M. U. Dist.* v. *Pacific Gas & Elec. Co.,* 20 Cal.2d 684 [128 P.2d 529]), and every presumption must be exercised in favor of the validity of the legislative classification (*Dribin* v. *Superior Court,* 37 Cal.2d 345 [231 P.2d 809, 24 A.L.R.2d 864]). Since 1915 when the Los Angeles County Flood Control District was created the Legislature has created 23 flood control and water conservation districts. Of these, 20 are county districts. ■    As said in the American River case, *supra* (p. 782): ''. . . it may be noted that since the early days of California down to the most recent decisions of this court, it has been held consistently, and without any departure, that districts formed for reclamation purposes, districts formed for protection from flood waters, levee districts, drainage districts and the like may be created by special law. The petitioner's brief refers to some thirty-six of said special acts, beginning with Levee District No. 1, Sutter County (Stats. 1867-1868, p. 316), and concluding with Orange County Flood Control District (Stats. 1927, p. 1325.)''

The differences between the general law and Act 205 are important.

First, as said in the American River case, *supra* (p. 780), in distinguishing the American River Flood Control District Act from the general laws then existing, ". . . the general law is permissive only. . . . Here the district is created by the special act."

Secondly, Act 9178 does not authorize the financing of projects by a bond issue. Deering's Acts 9178b and 9178c entitled Flood Control District Bond Validation Laws of 1933 and 1935, respectively, apply only to bonds *theretofore* issued. Thus under the general law district funds are limited to the amount of taxes which can be raised by direct levy in a particular year.

Thirdly, Act 205 provides for bond issues not only by the district as a whole but also by zones. ■ This court can take judicial notice of the geographical pattern of Alameda County. The northern portion is comprised of highly developed metropolitan cities. The southern portion is less developed in that respect. The act provides that the governing board of the district may establish zones within the district and institute zone projects for the specific benefit of such zone or zones. Each zone project may be carried on either separately or concurrently with other zone projects. Each zone project must be financed solely by bonds or assessments of the particular zone only, the proceeds to be used only for projects within the particular zone.

Fourthly, the act contains certain safeguards for the municipalities (which petitioner contends were included at the express request of the municipalities), which Act 9178 does not provide for.

(a) In the establishment of any zone the consent of any municipality any portion of whose territory is within the proposed zone must be obtained in the manner provided.

(b) The ad valorem taxes or assessments upon all property in the district to pay district general costs and to carry out any of the objects of the act common to the district may not exceed one cent on each $100 assessed valuation.

(c) The area of any municipality can at any time be withdrawn from the district by a majority vote of the electors of such municipality.

The foregoing are only some of the provisions which are peculiar to Act 205. They are sufficient to demonstrate that the Legislature was dealing with problems which were local

and special in character. ■ "A legislature that should refrain from all legislation that did not equally affect all parts of the state would signally fail in providing for the welfare of the public. In a state as diversified in character as in California, it is impossible that the same legislation should be applicable to each of its parts. Different provisions are as essential for those portions whose physical characteristics are different, as are needed in the provisions which are made for the government of town and country. ■ Those portions of the state which are subject to overflow, and those which require drainage, as well as those which for the purpose of development require irrigation, fall equally within the purview of the legislature and its authority to legislate for the benefit of the entire state or for the individual district." (*In re Madera Irr. Dist.*, 92 Cal. 296, 311 [28 P. 272, 675, 27 Am.St.Rep. 106, 14 L.R.A. 755].)

It should be pointed out that although we have had a general law for the formation of irrigation districts since 1897 (Stats. 1897, p. 254), one for the formation of levee districts since 1905 (Stats. 1905, p. 327), and one for the formation of reclamation districts since 1872 (former Pol. Code, § 3446, now Wat. Code, §§ 50300, 50301), there have been many special acts forming such districts thereafter which acts have been upheld by the courts. ■ "The Constitution does not deprive the legislature of the power to pass all special acts. It forbids special' laws in all cases where a general law can be made applicable. (Art. IV, § 25, subd. 33.) It was said by the Supreme Court: 'The legislature must, in the first instance, determine whether or not a general law can be made applicable in the particular case. The court will not interfere with its judgment on the subject, unless it clearly and beyond a reasonable doubt appears that it adjudged contrary to the fact.' " (*Argyle Dredging Co.* v. *Chambers*, 40 Cal.App. 332, 342 [181 P. 84].)

In *Reclamation Dist. No. 70* v. *Sherman*, 11 Cal.App. 399 [105 P. 277], where the court approved the legality of the act creating a special reclamation district, even though there was in existence a general law providing for the formation of such districts, and where the contention was made that the special act was obnoxious to subdivision 33, among other portions of the Constitution, the court said: " '. . . It would require a clear showing upon the face of the law itself that a special act was not required, before a court would interfere with the determination of a coordinate branch of the govern-

ment upon this subject, and, generally, as is said in *People v. McFadden,* 81 Cal. 489 [15 Am.St.Rep. 66, 22 Pac. 851], the determination of such a matter "depends upon questions of fact which this court has no means of investigating, and upon the solution of which it would not attempt to substitute its judgment in place of that of the legislature." ' "

In *Peterson* v. *Board of Supervisors,* 65 Cal.App. 670 [225 P. 28], the court said: "Neither is there any constitutional limitation to the creation of reclamation districts by special acts of the Legislature. This statement of the law has been definitely and firmly established in our jurisprudence by the many decisions of our courts having to do with this question." (P. 677.)

In amending the act in question in 1953 (Stats 1953, ch. 149, p. 920) the Legislature declared the latter to be an urgency measure necessary for the immediate preservation of the public peace, health and safety. It pointed out that in the last rainy season damages in the area where bond elections are proposed amounted to an estimated $1,870,000, and to make bond funds available as soon as possible to prevent further loss and damage to property and county roads it was necessary for the act to take effect immediately.

Petitioner's briefs set up many facts which would show the necessity for a special district. They do not appear in the petition, and this being a hearing on demurrer we must disregard them. ■ As said in *Los Angeles County F. C. Dist.* v. *Hamilton, supra,* 177 Cal. 119, 125, "Not only must the court view the act in the light of every presumption and intendment favorable to its constitutionality, but it must limit itself to a consideration of such facts as appear upon the face of the enactment, together with such others as are matters of judicial cognizance." ■ However, "A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it." (*Sacramento M. U. Dist.* v. *Pacific Gas & Elec. Co., supra,* 20 Cal.2d 684, 693; *Dribin* v. *Superior Court, supra,* 37 Cal.2d 345, 352.)
■ The matters before-mentioned which appear on the face of the act constitute facts which sustain the necessity for the special act as distinct from the general law. Particularly is this so in view of the fact that this court has no right to attempt to substitute its judgment for that of the Legislature. "Whether the work could best be done as a whole, or should be committed to the direction of separate districts, is, in reality,

a question of engineering rather than one of constitutional law. It is, therefore, a question for legislative determination." (*Los Angeles County F. C. Dist.* v. *Hamilton, supra,* 177 Cal. at p. 127.)

▇▇ Respondent also contends that the district could have been created under the provisions of sections 25680 to 25684 inclusive of the Government Code, which are based on former Political Code sections, one of which dates back to 1907. As said in *Los Angeles County F. C. Dist.* v. *Hamilton, supra,* 177 Cal. 119, 131, concerning constitutional objections there made, we think it sufficient to say that the foregoing discussion and citations of authority meet this contention. Moreover, these sections deal only with flood control relating to "streams and rivers" while the Alameda County act is far broader. As to section 8110 of the Water Code, which respondent seems to think adequate, what we have said concerning the Political Code sections applies to that section as well. In addition, section 8110 makes no provision for water conservation projects.

ARTICLE IV, SECTION 25, SUBDIVISION 28, CONSTITUTION

▇▇ This provides that the Legislature shall not pass local or special laws "Creating offices, or prescribing the powers and duties of officers in counties . . ." The Alameda County act provides that the board of supervisors of that county are ex-officio the board of supervisors of the district. It further provides that the district attorney, other designated as well as all, county officers, their deputies, employees, etc., are ex-officio officers, deputies or employees of the district and shall perform the duties necessary to carry out the provisions of the act. Respondent, in support of his contention that subdivision 28 is violated by those provisions, cites *Farrell* v. *Board of Trustees,* 85 Cal. 408 [24 P. 868], dealing with the appointment of policemen; *Welsh* v. *Bramlet,* 98 Cal. 219 [33 P. 66], dealing with the appointment of an assistant district attorney; *San Francisco* v. *Broderick,* 125 Cal. 188 [57 P. 887], dealing with the office of chief deputy county clerk; *Denman* v. *Broderick,* 111 Cal. 96 [43 P. 516], dealing with an act making boards of supervisors and governing bodies of cities, ex-officio the board of election commissioners in their respective counties or cities; and *Payne* v. *Murphy,* 18 Cal. App. 446 [123 P. 350], dealing with compensation of certain officers. However, none of these cases is applicable, as the matter has been flatly determined in *Los Angeles County*

*F. C. District* v. *Hamilton, supra,* 177 Cal. 119. The Los Angeles act had provisions similar to those in the Alameda County act making boards of supervisors, county officers and employees ex-officio supervisors, officers and employees respectively of the district. "The act is also attacked on the ground that it violates subdivision 28 of section 25 of article IV of the Constitution of California, in that it creates offices by special legislation, and also imposes duties on county officers by special act. In answer to this objection, it is unnecessary to do more than cite the cases of *People* v. *Sacramento Drainage Dist.,* 155 Cal. 373 [103 Pac. 207], and *Matter of Bonds of San Joaquin Irr. Dist.,* 161 Cal. 345 [119 Pac. 198], where similar statutory provisions were under consideration." (P. 130.)

With the many complexities of the problems arising from the necessities of flood control and water conservation, the topographical and geographical differences in our many counties, the obvious differences between the general laws and the Alameda County act, and all the matters discussed herein, we cannot say that the Legislature with the broad discretion it has, improperly determined that the general laws were not adequate to meet the situation in Alameda County, nor that it is not a situation "where the exigency of the occasion imperatively calls for a special law." (*City of Sacramento* v. *Swanston,* 29 Cal.App. 212, 216 [155 P. 101].)

It is ordered that a peremptory writ of mandate issue commanding respondent to sign and execute the bonds referred to in the petition and to perform all acts required of him relative to the signing, issuance and delivery of said bonds. Let the peremptory writ of mandate issue.

Peters, P. J., and Wood (Fred B.), J., concurred.