[Civ. No. 8999. Third Dist. Feb. 27, 1956.]

FAIRFIELD-SUISUN SEWER DISTRICT (a Public Corporation), Petitioner, v. COLIN C. HUTCHEON, as District Clerk, Respondent.

503

Kenneth I. Jones, Sr., and Burt D. Goodman for Petitioner.

Kirkbride, Wilson, Harzfeld & Wallace for Respondent.

SCHOTTKY, J. — The Fairfield-Suisun Sewer District seeks a writ of mandate to compel Colin C. Hutcheon, the district clerk, to publish and mail a notice of sale of certain bonds as provided in a resolution of the board of directors of the sewer district. The facts are set forth in an agreed

statement. The application was filed with the Supreme Court and was transferred to this court.

The Fairfield-Suisun Sewer District was created by a special act of the Legislature (Stats. 1951, ch. 303) and was duly organized. Bonds in the amount of $1,060,000 were approved by the voters on November 2, 1954, by a vote of 1392 for and 428 against. A resolution providing for the issuance of said bonds and a resolution calling for bids for the sale of the bonds and directing the clerk to give notice of sale by publication and by mail was adopted by the board of directors of the sewer district. A demand was made on the clerk to comply with the resolution and mail a notice of sale. He refused on the grounds (1) that the district was created by a special act of the Legislature in contravention of article IV, section 25, subdivision 33, of the California Constitution and is an illegal entity, (2) that the notice of the bond election did not comply with the provisions of the organic act, (3) that the ballots were improperly worded, and (4) the election was never canvassed by the directors of the district.

Mandate is a proper remedy. (*In re City & County of San Francisco,* 195 Cal. 426, 429 [233 P. 965]; *Dufton* v. *Daniels,* 190 Cal. 577, 581 [213 P. 949]; *Hartsock* v. *Merritt,* 93 Cal.App. 365 [269 P. 757].) Original jurisdiction has frequently been exercised by the upper courts in proper cases of this nature. (*City of Grass Valley* v. *Walkinshaw,* 34 Cal.2d 595 [212 P.2d 894]; *Ventura County Harbor Dist.* v. *Board of Supervisors,* 211 Cal. 271 [295 P. 6]; *In re City & County of San Francisco, supra; Los Angeles County Flood Control Dist.* v. *Hamilton,* 177 Cal. 119 [169 P. 1028].)

The obvious purpose of the proceeding is to obtain a judgment establishing the validity of the district and its right to issue bonds. Section 97 of the act authorizes the district to bring an action in the superior court to obtain such a judgment. The present proceeding was instituted in the hope that some time would be saved in bringing the proceeding to final judgment.

Article IV, section 25, of the Constitution provides:

"The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say:

. . . . . . . . . . . .

"Thirty-third—In all other cases where a general law can be made applicable."

■ The act which created petitioner, being a special law, is a valid enactment if there was no general law which could be made applicable to accomplish the purposes of the special law. This is the first question to be decided.

The powers of the district are enumerated in section 42 of the act as follows:

"The district may acquire, construct, reconstruct, alter, enlarge, lay, repair, renew, replace, maintain and operate such sewers, drains, septic tanks and sewage collection, outfall, treatment works and other sanitary disposal systems, and storm water and storm water collection, outfall and disposal systems, within or without the district, as in the judgment of the board shall be necessary and proper."

The purpose of the act is stated in section 160 as follows:

"The purpose of this act is to form the Fairfield-Suisun Sewer District in order that the area benefited may be served with sewer and storm drain facilities; special facts and circumstances, applicable to the area in which the district lies and not generally, makes the accomplishment of this purpose impossible under existing general laws, and therefore special legislation is necessary. The special facts are as follows:

"a. The area has no facilities for the treatment and disposal of sewage and is consequently contaminating and polluting the waters of Suisun Bay.

"b. Recent increases have resulted in a population disproportionate to the assessed valuation of taxable property in the area, and construction of adequate facilities cannot therefore be financed within the framework of existing general laws.

"c. The area is of strategic importance during times of war or threatened war because of the proximity of the Travis Air Force Base, formerly known as the Fairfield-Suisun Army Air Base, center of military air operations on the Pacific Coast. Influx of military men and their families has greatly aggravated the problem of sewage disposal in the area."

The reasons for the urgency of the act were stated by the Legislature as follows:

"Water pollution and contamination are critical problems in the proposed district. State and local health authorities are agreed on the urgent need for immediate sewage treatment facilities in the area if a serious health condition is to be avoided. Inadequacy of existing law makes it necessary that this legislation take immediate effect so that necessary facilities may be provided."

■ The recitals of section 160 are determinations of fact as to the conditions which required the organization of a special sewer district. Such recitals, if not contrary to facts which are of common knowledge, will be deemed conclusive by the courts. (*People* v. *Sacramento Drainage Dist.*, 155 Cal. 373 [103 P. 207] ; *Ventura County Harbor Dist.* v. *Board of Supervisors, supra.*) ■ It is a judicial question whether existing laws could have been made applicable to accomplish the purpose of the special act but the declaration of the Legislature that the purposes of the act could not be accomplished under existing general laws is entitled to great weight.

■ It is urged by respondent that the Fairfield-Suisun Sewer District could and should have been organized under one of several general laws. We shall refer briefly to these laws, noting their powers, and pointing out wherein they differ from and are not applicable to the Fairfield-Suisun Sewer District.

1. The Municipal Sewer Districts Act of 1911 (Health & Saf. Code Ann., § 4600 et seq.) which provides for ''sewers for sanitary or drainage purposes, and drains . . . for surface and storm waters.'' Bonds could be issued after an approval of the bond proposition by a two-thirds vote. It further provides for joint acquisition and use of sewers and sewage disposal plants. (Health & Saf. Code Ann., § 4636.8.) There are several reasons why the Fairfield-Suisun Act differs sufficiently so that the Municipal Bond Act of 1911 does not prevent special legislation.

a. The act is permissive. In *American River Flood Control Dist.* v. *Sweet,* 214 Cal. 778 [7 P.2d 1030], the Supreme Court held that a special act was valid where the general law is permissive only.

b. The special act provides for approval of bonds by a majority vote while the general act requires a two-thirds vote.

c. The act provides that as land is annexed to either city, it becomes a part of the district. (§ 1.) No comparable provision is in the act of 1911.

■ 2. County sanitation districts. (Health & Saf. Code Ann., § 4700 et seq.) This type of district does not have power to provide for storm drainage facilities. Taxes are levied against real property while the Fairfield-Suisun Act provides for the levy of taxes against all taxable property. (§ 122.)

■ 3. A joint municipal sewage disposal district (Health & Saf. Code Ann., § 5700 et seq.) does not provide for drain-

age facilities and this act was not enacted at the time the Fairfield-Suisun Act became law.

■ 4. A sanitary district as provided by section 6400 et seq. of the Health and Safety Code Annotated. This district requires a two-thirds vote on bonds and it has a bond limit of 15 per cent of assessed valuation. The Fairfield-Suisun Act only requires a majority vote and has no limitation.

■ 5. A county water district also seems to be applicable since it has the power to construct and operate facilities for the treatment and disposal of sewage waste and storm water (Wat. Code, § 31000 et seq.), but formation is permissive and the powers include storage and furnishing of water which apparently is more than is needed in the Fairfield-Suisun District.

Other acts could be cited or a combination of several acts might possibly achieve the same objectives but none are mandatory and no act provides similar provisions for bond security and voting requirements.

The Legislature has frequently exercised the power to create improvement and protection districts by special laws when it was deemed necessary in order to accomplish purposes that could not be accomplished by existing general laws. The following language of the court in *Solvang Municipal Imp. Dist.* v. *Jensen,* 111 Cal.App.2d 237, at page 241 [244 P.2d 492], is quite applicable to the instant proceeding:

"It clearly appears from the face of the act that there is pressing need for the public improvements which the district proposes to provide. The people of the area wished to organize a district with limited powers. If they had desired to incorporate as a city, or as a utility district, they would have done so. Proceedings under either of the general laws are permissive. They require petitions signed by percentages of the voters or landowners, and elections at which a majority vote is required to carry the propositions. In considering the propriety of creating the Solvang District by special act the Legislature no doubt was influenced by the fact that the landowners and voters of the area were evidently averse to both the utility district and city forms of government, and might not adopt either. This has been recognized as a good reason for the creation of an improvement district by special act, where there was imperative need for local public improvements or facilities. (*American River Flood Control Dist.* v. *Sweet,* 214 Cal. 778, *supra*; *Monterey*

*Peninsula Airport Dist.* v. *Mason,* 19 Cal.2d 446 [121 P.2d 727], *supra.*) The special act authorizes the facilities which the district needs. Incorporation under the general law would give the residents a form of government which they do not need and do not want. Special legislation in this situation has none of the evils against which the Constitution affords protection. Upon the contrary, it was the only means by which the requirements and the desires of the people in the area could be satisfied. That they are satisfied is attested by the fact that the vote was 205 to 28 in favor of the issuance of revenue bonds in the amount of $250,000 for the establishment of water and sewage facilities. No action by the Legislature could have been more consistent with the proper exercise of its powers than to give the district the form of district government the people asked for.''

▇▇▇ Respondent clerk contends also that the ''bond proceedings are fatally defective in that the notice of bond election failed to contain the denomination of the proposed bonds, as required by the act, and the ballot contained the words 'Bond-Yes' and 'Bond-No' instead of 'Bonds-Yes' and 'Bonds-No,' as required by law and the order of the board.''

Section 85 of the act provides that the notice of election shall, in addition to stating the time, place and purpose of the election, state also the amount and denomination of the proposed bonds. It is conceded that the notice here involved did not contain the denomination of the bonds. Section 90 of the act provides that bonds issued by the district ''shall be of such denominations as the board determines except that no bonds shall be of a denomination less than one hundred dollars ($100) or greater than one thousand dollars ($1,000).'' In authorizing the amount of the bond issue the voters must be presumed to know that the denominations of the bonds would be in accordance with this provision, and we do not believe that the rights of anyone could be prejudiced by the failure to state the denomination of the bonds. As stated in *E. M. Derby & Co.* v. *City of Modesto,* 104 Cal. 515, at page 523 [38 P. 900]:

''. . . Those directions which are not of the essence of the thing to be done, and by the failure to obey which the rights of those interested will not be prejudiced, are not to be regarded as mandatory. (Sutherland on Statutory Construction, § 447.) The change did not affect the validity of the bonds, and as no greater burden is imposed upon the taxpayers the appellant cannot complain.''

See also *Rideout* v. *City of Los Angeles*, 185 Cal. 426, 432 [197 P. 74].

We are of the opinion that the requirement as to the denomination of the bonds is directory, not mandatory.

 But even if it should be held that requirement that the notice of election should contain the denomination of the proposed bonds is mandatory we believe that the bond proceedings here involved were validated by the First, Second and Third Validating Acts of 1955 (Stats. 1955, chs. 11, 1565, 1567). Section 5 of each of these acts provides:

"All acts and proceedings heretofore taken by or on behalf of any public body under any law, or under color of any law, for the authorization, issuance, sale, or exchange of bonds of any such public body for any public purpose are hereby confirmed, validated, and declared legally effective. This shall include all acts and proceedings of the governing board of such public body and of any person, public officer, board or agency heretofore done or taken upon the question of the authorization, issuance, sale, or exchange of such bonds."

The acts specify the various categories of public bodies to which the act shall be applied. Some of the public bodies named are broad enough to include the Fairfield-Suisun Sewer District. These include municipal sewer districts, sewer maintenance districts, storm water districts, joint municipal sewage disposal districts, and drainage districts. Any of these could be construed to embrace the Fairfield-Suisun District. The Legislature did not specifically name any district, and we think it is clear that what the Legislature was validating was bond proceedings of any district empowered to act in the manner named. Therefore, any errors in the election proceeding would be cured.

██ ██ There is no merit in the further contention of respondent that the fact that the ballot contained the words Bond-Yes and Bond-No instead of Bonds-Yes and Bonds-No made the bond proceedings fatally defective. It must be apparent that this was a mistake of the printer and that no voter could have been misled as to the significance of a Yes or No vote. Furthermore we believe that any such error would be cured by the validating acts hereinbefore referred to.

 The final contention of respondent is that the bond election proceedings were void because the ballots were not canvassed by the board of directors of the district.

The bond election was duly consolidated with the state-wide election held the same day, the board of directors, pur-

suant to section 10054 of the Elections Code, had authorized the canvass of the returns by the board of supervisors who had in turn, pursuant to the same section and section 6921, authorized the canvass to be made by the county clerk.

Upon completion of the canvass, the county clerk duly entered a statement of the result on the records of the board of supervisors.

The canvass of election returns is merely a ministerial and not in any sense a legislative act. (*Devlin* v. *Donnelly*, 20 Cal.App. 495 [129 P. 607]; *Cerini* v. *De Long*, 7 Cal.App. 398 [94 P. 582]; 16 Ops. Cal. Atty. Gen. 141; 16 Ops. Cal. Atty. Gen. 120.) The entry of the statement of the result is of the same ministerial nature. (29 C.J.S. 346, 347, and cases cited.)

■ We do not believe that under the circumstances here present there was any such irregularity as to render the election invalid. The directors in proceeding in the manner they did no doubt were actuated by the commendable desire to save expense to the district by taking advantage of the general election. And, furthermore, we believe that any irregularity would likewise be cured by the said Validating Acts of 1955.

In view of the foregoing we conclude that the Fairfield-Suisun Sewer District was created by valid act of the Legislature, that it has the right to issue the bonds approved at the bond election, and that it is entitled to a writ of mandate directing respondent clerk to publish and mail a notice of sale of certain bonds as provided in the resolution of the board of directors.

Let the writ issue.

Van Dyke, P. J., and Peek, J., concurred.