[Civ. No. 566.    Fifth Dist.    Aug. 23, 1966.]

CHARLES PAUL, as Director of Agriculture, etc., Plaintiff and Respondent, v. GARLAN EGGMAN, Defendant and Appellant.

Morgan, Beauzay, Wylie, Ferrari & Leahy, Morgan, Beauzay & Holmes and Philip L. Hammer for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Walter S. Rountree, Assistant Attorney General, Gerald L. Friedman and Walter E. Wunderlich, Deputy Attorneys General, for Plaintiff and Respondent.

McMURRAY, J. pro tem.*—This is an appeal from an injunction enjoining appellant from certain activities alleged to be in violation of sections 784 and 796.2 of the Agricultural Code of the State of California. The appeal is based on an agreed statement of facts which appears as follows:

On April 13, 1965, the plaintiff, Charles Paul, as Director of Agriculture of the State of California, brought this action for civil penalties and injunctive relief against the defendant, Garlan Eggman, for violating chapter 2, division 5, of the Agricultural Code of California, and particularly, sections 784 and 796.2 thereof. An order to show cause and a temporary restraining order were issued on April 13, 1965, and thereafter on April 20, 1965, a hearing on the order to show cause on the preliminary injunction was held. After hearing oral argument and considering the documents filed by the opposing parties, the court below ordered a preliminary injunction against defendant. This injunction was filed with the court and personally served on the defendant. A timely notice of appeal was filed in the superior court and the matter is now before this court.

It appears that appellant owns a parcel of land in Terra Bella, Tulare County, consisting of approximately 18 acres of orange groves. In picking the oranges from his groves appellant places them in open citrus field picking boxes. For approximately the last 10 years appellant has personally sold oranges from a location at 2425 Bascom Avenue, City of Campbell, County of Santa Clara. During this period, appellant has

---

* Assigned by the Chairman of the Judicial Council.

transported the oranges which he grows in Tulare County to this location in Santa Clara County. The oranges transported by appellant to this location are those which have been grown at his groves in Tulare County. The oranges are transported by truck in the open citrus field picking boxes. Upon arriving at the Bascom Avenue location appellant sells his oranges to the public. The oranges which appellant sells are taken from the open citrus field picking boxes and from grading bins, the latter being used for display purposes only. The oranges are sold in varying quantities. In March of 1965 the above course of conduct came to the attention of respondent Director through an official in his department and an Agricultural Commissioner of the County of Santa Clara.

Section 784 of the Agricultural Code of the State of California provides as follows: "It is unlawful to prepare, pack, place, deliver for shipment, deliver for sale, load, ship, transport, cause to be transported or sell any fruits, nuts or vegetables in bulk or in any container or subcontainer unless such fruits, nuts and vegetables, and their containers, conform to the provisions of this chapter."

At the time of the alleged offenses section 796.2 of the Agricultural Code of the State of California provided as follows: "All oranges (except tangerines and mandarins), or lemons intended for shipment out of the State of California, before being so shipped, shall be packed in closed standard containers number 58, and shall be uniform in size. All grapefruit intended for shipment out of the State of California, before being so shipped, shall be packed in closed standard container number 59 and shall be uniform in size. All oranges (except tangerines and mandarins), or lemons offered for distribution or sale within the State of California, before being so offered, shall be packed in closed standard container number 58 or 60 and shall be uniform in size. All grapefruit offered for distribution or sale within the State of California, before being so offered, shall be packed in closed standard container number 59 or 61 and shall be uniform in size.

"The provisions of this section shall not apply to (1) the sale, marketing or transportation for sale or marketing of oranges. grapefruit or lemons for charitable purposes, unemployment relief or for use by the United States government or its agencies for relief distribution, or (2) the sale, marketing or transportation for sale or marketing of oranges, grapefruit or lemons in closed containers intended for sale to the consumer in their unbroken form and the net contents of which do not

exceed 25 pounds, provided, however, that grapefruit when in bags and the net contents of each such bag does not exceed 25 pounds, shall be placed in closed standard container number 62, except each bag of grapefruit is exempt from this requirement when only one such bag is mailed, delivered, or sold directly to a consumer, or (3) the sale, marketing, or transportation for sale or marketing of oranges, grapefruit or lemons not in standard containers when transported directly from the State of California to the State of Baja California, Republic of Mexico, or (4) to oranges, grapefruit or lemons in a retail establishment in possession of a retailer for the purpose of resale directly to consumers; nor to oranges, grapefruit or lemons sold by a grower or packer regularly engaged in the growing or packing of these fruits directly to consumers on the premises where produced or packed or at a retail stand operated by such grower or packer near the point of production, which in no case shall be outside of the county in which the fruit was produced. As used in this section, 'consumer' means a person who buys oranges, grapefruit or lemons for use as a food and not for resale.

''Packed citrus fruit imported into this state from another state need not be packed in standard containers as specified in this code for such fruit if it is packed in containers conforming to the applicable laws or regulations of the state of origin or of the United States.'' (Stats. 1965, ch. 14, § 1, pp. 885-886.) A subsequent amendment (Stats. 1965, ch. 950, § 4, p. 2560) did not change those provisions which concern us.

The temporary restraining order and the preliminary injunction both forbade appellant from any further violation of these sections and specifically required him to conform to the provisions of section 796.2 of the Agricultural Code.

The issues as set forth by appellant are:

''1. Were the oranges, the sale of which was enjoined herein, 'in a retail establishment in possession of a retailer for the purpose of resale directly to consumers,' so as to bring this within the first clause of exception (4) of section 796.2 of the Agricultural Code of the State of California?''

''2. Were the oranges, the sale of which was enjoined herein, 'sold by a grower or packer regularly engaged in the growing or packing of these fruits directly to consumers on the premises where produced or packed,' so as to bring the case within the exception in the second clause of exception (4) of section 796.2 of the Agricultural Code of the State of California?''

"3. Is section 796.2 of the Agricultural Code of the State of California unconstitutional under article I, section 11 of the California Constitution which provides that all laws of a general nature shall have a uniform operation?"

"4. Is section 796.2 of the Agricultural Code of the State of California invalid under article I, section 21 of the California Constitution in that it grants to citizens, or classes of citizens, privileges or immunities which, upon the same terms, are not granted to all citizens?"

The appurtenant provisions of the Agricultural Code are aimed at standardizing citrus marketing practices and provide standards for packing, shipping and processing of oranges and other citrus fruits. With two exceptions not relevant here, the original legislation (Stats. 1941, ch. 1197, § 2, p. 2969) provided that only those oranges shipped out of state had to be of uniform size and of standard pack, the Legislature expressing its intention in the following language found in Statutes of 1941, chapter 1197, section 1, pages 2968-2969: "It is hereby found and declared that the citrus industry of California is a permanent industry upon which the prosperity of the State in a large measure depends; that the citrus industry is now, and has for several years been, threatened with severe losses because of low prices received for fruit in markets outside of the State of California and resulting low returns to producers; that unless such conditions are remedied recurring losses in the future are likely to occur; that the effect thereof is to seriously imperil the citrus industry; that such low prices are in part caused by demoralization of out-of-state markets through the use in the marketing and shipment of citrus fruits from California of deceptive packs and packing containers; that the packing of oranges, lemons or grapefruit in loose or 'jumbo' packed containers, unlidded, permits the filling of an otherwise standard package with a deceptively small quantity of irregularly sized fruit as compared to the standard package in competition with which it is sold; that these conditions are not so prevalent in markets within the State of California because transportation conditions are such as to cause the greater portion of the fruits sold in such markets to be in loose form; that certain small consumer packages designed for sale in unbroken packages to the consumer do not have at this time these same deceptive or demoralizing tendencies."

In 1961 the amendment to section 796.2 of the Agricultural Code extended coverage to shipments within the state, presumably because the Legislature had determined that

marketing practices within the state had degenerated to a point where similar standardization was necessary to protect the industry. (Stats. 1961, ch. 658, § 2, p. 1871.) Appellant seeks to avail himself of the first exception stated in clause (4) of section 796.2 which provides that the standardization regulations do not apply to oranges in a retail establishment in possession of a retailer for the purpose of resale directly to consumers. In advancing this argument appellant urges that he is a retailer and as authority therefor cites dictionary definitions which certainly would support his position that he is a retail merchant or dealer. ■ The respondent, however, also cites dictionary definitions to contest the position of appellant and it appears to us that a court in interpreting a statute is not necessarily bound by strict dictionary definitions divorced from the thrust and intent of the statute under consideration. ■ A full and fair reading of this statute is persuasive that the appellant here is not a retailer within the meaning of the exemption set forth in clause (4) because that section is directed to a retailer who has come into possession of oranges which have previously met the standardization requirements and which the retailer buys for resale to consumers. That is not the case here. These are oranges produced by the grower which have been transported and sold without ever complying with the standardization requirements.

■ The next argument advanced by appellant is one to the effect that the oranges here in question were in fact ''produced'' in Santa Clara County where they were sold, instead of in Tulare County where they were grown, citing for authority a dictionary definition which included a definition that to produce means to bring forward, to bring or offer to view or notice, to exhibit. What has been said above also applies to this contention of appellant which, when viewed in relation to the statute in which it appears, is very nearly quibbling. ■ It must be remembered, as said in *County of Alameda* v. *Kuchel*, 32 Cal.2d 193, 199 [195 P.2d 17] : ''It is a cardinal rule that statutes should be given a reasonable interpretation and in accordance with the apparent purpose and intention of the law makers. Such intention controls if it can be reasonably ascertained from the language used.''

■ Viewing appellant's activities in the light of the language in section 796.2 and considering these two arguments, the appellant cannot come within the exemption from the standard packing requirements of that section.

Appellant's next two contentions as set forth in his state-

ment of issues numbered 3 and 4 above present a more difficult problem. These contentions are so similar to one another that they can be treated as one. The questions seem to resolve into a problem of classification, which can be stated as follows: When sales from orange growers direct to consumers are exempted from standardization requirements, may the Legislature constitutionally restrict such sales to nearby locations, prohibiting such sales outside the county of origin? The consideration of this question requires viewing of article I, section 11, of the California Constitution, which provides: "All laws of a general nature shall have a uniform operation," and a consideration of article I, section 21, of the California Constitution, which provides: "No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the Legislature; nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens."

Statutory enactments relative to standard containers for foodstuffs are upheld as a proper exercise of the police power. (See *Pacific States Box & Basket Co.* v. *White*, 296 U.S. 176, 181 [56 S.Ct. 159, 161, 80 L.Ed. 138, 143, 101 A.L.R. 853, 858]; *In re Fujii*, 189 Cal. 55, 58-59 [207 P. 537]; see also *In re Hayes*, 134 Cal.App. 312 [25 P.2d 230]; *Detweiler* v. *Welch*, 46 F.2d 75.) ▇▇▇ And it would appear that this statute in the Fruit, Nut and Vegetable Standards Act, insofar as it imposes standard container requirements, is a proper exercise of the police power. The question, however, still remains as to whether or not the exception for sales by a grower near his farm but not outside the county where the oranges are grown is a reasonable classification under that police power. In *Sawyer* v. *Barbour*, 142 Cal.App.2d 827, 838 [300 P.2d 187], it is said: "The provisions of the Constitution requiring all laws of a general nature to have uniform operation, prohibiting the granting of special privileges and immunities, prohibiting the enactment of special laws in particular cases, do not prevent classification by the Legislature or require that statutes operate uniformly with respect to persons who are in fact different. [Citation.] A statute meets the constitutional requirements if it relates to and operates uniformly on the whole of a single class properly selected."

▇▇▇ The classification must be reasonably related to the purpose of the statute. (*County of Los Angeles* v. *Superior Court*, 62 Cal.2d 839, 846 [44 Cal.Rptr. 796, 402 P.2d 868].) The test of the propriety of the classification seems to be the

same either under article I, section 11, or article I, section 21. (*Professional Fire Fighters, Inc.* v. *City of Los Angeles,* 60 Cal.2d 276, 287-289 [32 Cal.Rptr. 830, 384 P.2d 158]; *County of Los Angeles* v. *Superior Court, supra;* see also *Department of Mental Hygiene* v. *Kirchner,* 62 Cal.2d 586 [43 Cal.Rptr. 329, 400 P.2d 321]; *People* v. *Western Fruit Growers,* 22 Cal. 2d 494 [140 P.2d 13].) In the last cited case it is said at pages 506-507: ''Problems of classification under the California Constitution are thus similar to those presented by the federal equal protection of the laws clause of the 14th Amendment. Under either provision, the mere production of inequality which necessarily results to some degree in every selection of persons for regulation does not place the classification within the constitutional prohibition. The discrimination or inequality produced, in order to conflict with the constitutional provisions, must be 'actually and palpably unreasonable and arbitrary,' or the legislative determination as to what is a sufficient distinction to warrant the classification will not be overthrown. [Citations.] When a legislative classification is questioned, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification.''

In the instant case no evidence was introduced at the hearing on the preliminary injunction as to the harmful or non-harmful effects of the marketing practices which were followed by the appellant here, and the respondent, although arguing that the legislative purpose is to prevent harmful practices, nowhere indicates what is harmful about a farmer shipping his oranges in bulk to another county and selling them there. When it is remembered, however, that the citrus industry in California is a large and complex one, and that sales are made in great quantities, and that stability of market and of quality is essential, it appears that the Legislature should have broad power in regulating the marketing production, processing and distribution of the citrus products.

The exemptions allowed to a farmer selling his product at nearby locations and in any event not outside the county where the citrus is grown, does not appear to be an unreasonable limitation, but seems to stem from a feeling of sympathy on the part of the Legislature with the grower who wishes to engage in a limited marketing of his products. To allow extension of a farmer's sales all over the State of California without any limitation as to territorial extent might

result in a chaotic condition of the market wherein the standardization provisions which seem to be set forth with great specificity would fail because of the uncontrolled marketing of ungraded and unstandardized products. To contend that the restriction of the marketing to a county is an unreasonable classification is to overlook the fact that in most places, and certainly in rural areas, the boundaries of a county are matters of common knowledge and are considered as being existing, familiar, and well-known boundaries. The recognition of such territorial limitations is not unique in this legislation. (See, e.g., Bus. & Prof. Code, §§ 16601, 16602.) A fair reading of the statute persuades us that the Legislature considered the sales made in areas adjoining the farmer's land and within the county where his product is grown would be of not too substantial a character. However, to allow him to extend this uncontrolled marketing of citrus products could affect the otherwise regulated market, and thus it appears that the county line limitation is reasonably related to preventing intrastate harmful marketing practices. ▪▪▪ Even classification on the basis of an attempt to equalize competition may be a valid aim within the police power. (See *Knudsen Creamery Co.* v. *Brock*, 37 Cal.2d 485, 493-495 [234 P.2d 26].)

▪▪▪ In interpreting the Legislature's intent in this matter, some weight has been given to the declarations contained in section 19.5 of the Agricultural Code of the State of California, where it provides: "It is hereby declared, as a matter of legislative determination, that the provisions of this code are enacted in the exercise of the power of this State for the purposes of promoting and protecting the agricultural industry of the State and for the protection of the public health, safety and welfare. In all civil actions the provisions of this code shall be liberally construed for the accomplishment of these purposes and for the accomplishment of the purposes of the several divisions of this code, . . ."

The legislative expression in the 1941 Act, *supra*, that the standardization proceedings were not deemed to be required within the State of California must also be given some weight. As has been noted heretofore, by extending these provisions to transactions within the State of California, the Legislature must have found that practices were appearing within the state which required the extension of these standardization provisions. ▪▪▪ While it is true that legislative declarations are not binding upon this court, they are, as declarations of policy, "entitled to great weight and it is not the duty or

prerogative of the courts to interfere with such legislative finding unless it clearly appears to be erroneous and without reasonable foundation." (*Housing Authority* v. *Dockweiler*, 14 Cal.2d 437, 449-450 [94 P.2d 794].)

From a reading of the declaration set forth in the above section of the Agricultural Code, it appears that as well as promoting and protecting the agricultural industry of the state, the provisions of the code are enacted in the exercise of the power of the state for the purpose of also protecting the public health, safety and welfare of the people of this state. By requiring standardization in grading and packing of citrus fruits, the consuming public is protected from unprincipled people who offer for sale substandard fruit in off sizes and without any regard as to its quality.

The exception granted to the local grower to sell his fruit at a roadside stand is a privilege to him, allowing him to sell at a place close to his home where, if the quality of the produce he offers and purveys to the public is substandard, many of his consumers who are also his neighbors would in all probability evidence any dissatisfaction with the quality of his produce by failing to deal with him again, thereby imposing an economic sanction which in and of itself would require him to offer acceptable products at his establishment.

The same pressure would not be present upon a grower who is acting as a retailer at a location far distant from his home or chief base of operation. In that event the grower-retailer is in the position of marketing bulk oranges without regard to any quality standard or packaging standard, and the consuming public might well be victimized by inferior produce, the seller not being subject to any community pressure to furnish produce of any particular quality.

The fact that a retailer purchases oranges from a standard pack and then sees fit to market the oranges in some other container does not do away with the necessity that the oranges in the first instance must meet quality and packaging standards.

The classification here appears to be reasonable and fair. It reflects an implicit determination that local unrestricted sales by farmers do not cause harmful effects on the citrus market, but that statewide sales would. The rule as to the judgment of the fairness of classification is well stated in *Fraenkel* v. *Bank of America*, 40 Cal.2d 845, 849 [256 P.2d 569], where it is said: "All presumptions favor the legislative classification, which cannot be overturned unless plainly arbitrary. [Citations.] If the Legislature could have

acted upon any conceivably reasonable ground, the courts must assume that the Legislature acted upon such basis. In short, the Legislature's judgment 'on the question whether or not a particular provision shall be made for any class of cases, and as to the classification thereof, is not to be interfered with except for very grave causes and where it is clear beyond reasonable doubt that no sound reason for the legislative classification, and for the different provisions regarding the same, exists.' ''

It is apparent that the Legislature is far better equipped to survey the methods of production, distribution, processing and sale of citrus products than are the courts, and in the absence of an affirmative showing that there was a clear violation of the reasonableness of classification, the order must be and it is affirmed.

Stone, J., concurred.

Conley, P. J., dissented.

Appellant's petition for a hearing by the Supreme Court was denied October 19, 1966. Mosk, J., was of the opinion that the petition should be granted.