71 Cal.App.3d 1005 (1977)
140 Cal. Rptr. 168
RALPH McGLOTHLEN, Plaintiff and Respondent,
v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant. CHARLES SIEBE SCALLY, Plaintiff and Respondent,
v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant. OLIVER MEDEIROS, Plaintiff and Respondent,
v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant. CLAYTON JAMES HURT, Plaintiff and Respondent,
v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.
Docket Nos. 38438, 39690, 39691, 39692.
Court of Appeals of California, First District, Division One.
July 27, 1977.
*1010 COUNSEL
Evelle J. Younger, Attorney General, and Victor D. Sonenberg, Deputy Attorney General, for Defendant and Appellant.
Paul Ligda, Public Defender, Elisabeth Semel, Deputy Public Defender, Stephens Adams, Nancy Sevitch, Favaro & Lavezzo, Thomas L. Gill, Taft & Taft, and Franklin Taft for Plaintiffs and Respondents.
OPINION
SIMS, Acting P.J.
In each of these consolidated appeals the Department of Motor Vehicles has appealed from a judgment of the superior court which granted the respective petitioner's petition and ordered the department and the municipal court, in which each of the petitioners had suffered a second conviction of driving while under the influence of intoxicating liquor (Veh. Code, § 23102), to refrain from revoking the petitioner's drivers license (cf. id., § 13352, subd. (c)) for so long as the petitioner participated successfully in the Solano County Rehabilitation Program. The trial court thereby awarded each of the petitioners the *1011 benefits of sections 13201.5[1] and 13352.5[2] of the Vehicle Code despite the fact that Solano County was not one of the counties approved for the *1012 demonstration program authorized by the Legislature for the calendar years 1976 and 1977, pursuant to subdivision (b) of section 13201.5. The petitioners argued below in their consolidated cases, and the trial court in a scholarly opinion concluded that the restriction of the application of the provisions of sections 13201.5 to four or fewer counties as provided in subdivision (b) was special or local legislation in violation of section 16 of article IV of the California Constitution[3] and denial of equal protection of the laws and a grant of special privileges and immunities in violation of section 7 of article I of that Constitution.[4] The court also concluded that it was appropriate to correct the classification it found to be discriminatory by invalidating the restriction to four or fewer counties and by extending the statutory benefits to those whom it deemed the Legislature had unconstitutionally excluded.
On appeal the department urges that the limitation of an experimental program affecting public safety to four demonstration counties does not result in a denial of equal protection of the laws under either federal or state constitutional provisions. It points out that since the judgments were entered in the foregoing cases (Apr. 14, 1976), the provisions of the controversial section have been upheld as against the contention that they denied a defendant, convicted of multiple violations of section 23102 in a nondemonstration county, equal protection of the laws. (Department of Motor Vehicles v. Superior Court (Hardin) (1976) 58 Cal. App.3d 936 [130 Cal. Rptr. 311] [hg. den. Aug. 4, 1976].) The department fails to directly meet petitioners' alternative constitutional argument. Nevertheless for reasons set forth below, we find that the trial court erred in concluding petitioners were entitled to the benefit of the provisions of the section. The judgments must be reversed.
*1013 Respondent-petitioners agree that the following facts are undisputed:
(1) Each of the respondents have suffered multiple drunk driving convictions.
(2) Solano County has an operative alcoholic rehabilitation program.
(3) Solano County was not one of the four demonstration counties selected for the two-year experimental period by the Office of Alcoholism pursuant to section 13201.5, subdivision (b).
(4) It is this confining of the operation of the statute to four counties during the two-year experimental period which the respondents challenge as a denial of equal protection under the state and federal Constitutions.
(1) They insist, however, that this court must limit consideration of the constitutional issue of classification under equal protection principles to the question of whether lack of funding was a rational basis for the discrimination resulting from the demonstration program as enacted and implemented;[5] and they further contend that this court should disregard and refuse to take judicial notice of matters in reports before the Legislature at the time the section was adopted. For reasons set forth below we reject those arguments.

I
A representative of the State Office of Alcoholism testified as to the procedure followed by the former office of program management in selecting the demonstration counties. (See fn. 5.) After testifying that Solano County was not one of the approved programs, he volunteered that the operation of the detoxification facilities for inebriates authorized by sections 5170-5176 of the Welfare and Institutions Code, and referred to in section 647, subdivision (ff) of the Penal Code (see People v. *1014 McNaught (1973) 31 Cal. App.3d 599 [107 Cal. Rptr. 566]; and People v. Superior Court (Colon) (1972) 29 Cal. App.3d 397 [105 Cal. Rptr. 695]), took $9 million of a $27 million budget for programs under the jurisdiction of the office. He then pointed out that there was no state money appropriated to operate the program under the Vehicle Code and so it would have to be entirely self-financed, and that one of the problems involved in the program is the expense of furnishing the required services to indigents and those unable to pay the full cost. The court then cut short further inquiry.
The department, however, did not rest on the lack of state funding for a rational explanation of the resulting divergence between the treatment to be received in 54 of the 58 counties. The department's attorney had already disclaimed such a basis when testimony was elicited from a representative of the Solano County Department of Mental Health concerning the manner in which the costs of the program might be met. He stated, "Your Honor, our argument is that it's not the fact that it's going to cost too much, because it's going to cost that much in two years. Our argument is that they want  before they expend money, before they turn these people loose on the public, as it were, they want to make a rational selection of the correct program to implement throughout the State."
There is no merit in the contention that the department may not show any other rational basis for the special classification.

II
In a memorandum of points and authorities attached to its return the department pointed out that the statute by its terms limited the application of the program "... in order to determine which types of programs can most effectively provide for treatment of persons convicted of" driving under the influence of intoxicating liquor or the combined influence of intoxicating liquor and any drug; and that the then Office of Alcohol Program. Management was mandated to approve several types of programs in four or fewer counties deemed most appropriate in order to prepare for effective implementation statewide. The department pointed out that it was prudent and reasonable to determine how the newly proposed regulatory procedure would work before applying it statewide. The district attorney likewise stressed the experimental nature of the program for the years 1976 and 1977.
*1015 The department attached to its trial brief a copy of a letter promulgated by the author of Senate Bill No. 330 which was enacted into the amendments here under review. According to him the four-county project was "designed to demonstrate the effectiveness of various kinds of programs." It is questionable whether that letter has any probative effect or may be resorted to in any way to determine the interpretation or basis for the enactment. (2) In re Marriage of Bouquet (1976) 16 Cal.3d 583 [128 Cal. Rptr. 427, 546 P.2d 1371], tells us, "In construing a statute we do not consider the motives or understandings of individual legislators who cast their votes in favor of it. [Citations.] Nor do we carve an exception to this principle simply because the legislator whose motives are proffered actually authored the bill in controversy [citation]; no guarantee can issue that those who supported his proposal shared his view of its compass. The understandings of [the author], then, do not per se expose the Legislature's intent." (16 Cal.3d at pp. 589-590.)
In the case last cited the court, however, considered the letter for two reasons. First, as an account of the debate which itself could properly be considered, and secondly, because it had been made part of the records of the Legislature, even though that act was taken following passage of the legislation. (Id., at pp. 589-590.) It is well established that the courts may take judicial notice not only of the statutory law of this state (Evid. Code, § 451, subd. (a)), but also of the resolutions and private acts of the Legislature of this state, and, as well, the official acts of the executive departments and Legislature (id., § 452, subds. (a) and (c)). The Law Revision Commission comment to section 450 of the Evidence Code expressly recognizes: "Under the Evidence Code, as under existing law, courts may consider whatever materials are appropriate in construing statutes, determining constitutional issues, and formulating rules of law. That a court may consider legislative history, discussions by learned writers in treatises and law reviews, materials that contain controversial economic and social facts or findings or that indicate contemporary opinion, and similar materials is inherent in the requirement that it take judicial notice of the law. In many cases, the meaning and validity of statutes, the precise nature of a common law rule, or the correct interpretation of a constitutional provision can be determined only with the help of such extrinsic aids." (See Witkin, Cal. Evidence (2d ed. 1966) § 154, pp. 148-149, § 155, p. 149, § 165, pp. 152-153, § 167, pp. 153-154, and § 168, p. 155; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 70, pp. 3308-3310; Board of Education v. Watson (1966) 63 Cal.2d 829, 836 [48 Cal. Rptr. 481, 409 P.2d 481]; and Harris v. Alcoholic Bev. etc. Appeals Bd. (1965) 62 Cal.2d 589, 595-596 [43 Cal. Rptr. 633, 400 P.2d 745].) In *1016 Harris v. Alcoholic Bev. etc. Appeals Bd., supra, the court dealt with the situation where judicial notice of a bulletin issued by the Department of Alcoholic Beverage Control had not been taken below, and the material was not contained in the record. The court stated: "The requirement in [Government Code] section 11515 that the parties be informed of, and given an opportunity to refute, the matters to be noticed was designed to protect the parties from unwarranted action by an agency, and the requirement that matters noticed be referred to in the record was to insure that the facts noticed would be brought to the attention of the reviewing court. (See Tenth Biennial Report of Judicial Council of Cal. (1944) p. 23.) [¶] In the present case no reason is apparent why the failure to make the bulletin a part of the administrative record should preclude our taking judicial notice of it." (62 Cal.2d at p. 596.)
We, therefore, accept and consider the extracts from the report rendered to the Legislature, at its direction, by the Department of Motor Vehicles. (Stats. 1972, Res.Ch. 152 [Sen. Con. Res. No. 44-Relative to drinking drivers], p. 3443.)[6] There is no merit to petitioners' contention that the materials in question should be treated as factual matter which must be disregarded on appeal when not made part of the record below. (See e.g., Oldenkott v. American Electric, Inc. (1971) 14 Cal. App.3d 198, 206-208 [92 Cal. Rptr. 127]; and Lady v. Barrett (1941) 43 Cal. App.2d 685, 686-687 [111 P.2d 702].)

III
(3a) In Department of Motor Vehicles v. Superior Court (Hardin), supra, the court rejected the contention that the provisions of sections 13201.5 and 13352.5, which confine eligibility for the treatment program *1017 (and the resultant relief from suspension of license) to those convicted in one of the four demonstration counties, deny a person similarly convicted elsewhere equal protection of the law. The court stated, "Real party's equal protection argument is without merit. If no `suspect classification' or `fundamental interest' is involved, legislation which establishes different treatment for different groups of persons is vested with a presumption of constitutionality and will be upheld if the basis of differentiation bears a rational relationship to the purposes of the statute. (Westbrook v. Mihaly, 2 Cal.3d 765, 784-785 ..., vacated on other grounds in 403 U.S. 915 ...; Sail'er Inn, Inc. v. Kirby, 5 Cal.3d 1, 16....)
"The relationship between the limitation of the program to four counties and the purpose of the statute is clear. This court may take judicial notice of the fact that the problems of alcoholism and the drinking driver are serious ones for which our society has found no easy solution. The intent of the statute is obviously to experiment with alcoholism treatment programs on a limited basis and for a limited time. If these programs are proven effective, they may be implemented on a statewide basis; if the scheme is not successful, it may be abandoned, and the state will not have incurred the burden of funding and administering it on a statewide basis.
"Furthermore, the United States Supreme Court has upheld state statutes which discriminate among individuals in different counties. (Salsburg v. Maryland, 346 U.S. 545 ...; see People v. Superior Court, 29 Cal. App.3d 397, 400 ...; People v. McNaught, 31 Cal. App.3d 599....)" (58 Cal. App.3d 936 at pp. 941-942.)
We acknowledge that this court is not bound by the holding in that case, because one division or district may decline to follow a prior decision of a different district or division. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 667, p. 4580.) We nevertheless are of the opinion that the reasoning and the conclusions expressed in that opinion are sound. (4) We also note that although the Supreme Court's denial of a hearing is not to be regarded as expressing approval of the propositions of law set forth in an opinion of the Court of Appeal or as having the same authoritarian effect as an earlier decision of that court, it does not follow that such denial is without significance as to the views of the members of that court. (See DiGenova v. State Board of Education (1962) 57 Cal.2d 167, 178 [18 Cal. Rptr. 369, 367 P.2d 865]; and Witkin, op.cit., §§ 669-670, pp. 4581-4584.)
*1018 We reject the petitioners' suggestion that an opinion filed in a case in which an extraordinary writ is granted, as distinguished from the summary denial of an application for relief, has less precedential value than a written decision on appeal. (5) Since the summary denial of a writ is not res judicata on the subject matter of the application (5 Witkin, op.cit., Extraordinary Writs, § 146, pp. 3917-3918), such denial cannot furnish any precedent. On the other hand, any written published opinion of an appellate court will furnish a binding precedent until disapproved or overruled. (See Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455 [20 Cal. Rptr. 321, 369 P.2d 937]; and 6 Witkin, op.cit., Appeal, § 659, p. 4574, § 664, pp. 4578-4579, and § 668, p. 4581.) As the court noted in Hardin, recourse to an extraordinary writ, rather than appeal, was permitted because the matter was of considerable public importance. (58 Cal. App.3d at p. 940.) It is frivolous to suggest the case would receive less attention than a direct appeal.
(3b) For reasons set forth in parts I and II we also reject petitioners' proposed distinction on the ground that in this case the sole justification for the classification was the lack of funding. We also note that in Hardin the petitioner apparently claimed the right to participate in a private program, with the characteristics prescribed by the statute, whereas in this case the petitioners wish to participate in a county established operative rehabilitation program. In each case petitioners disregard the experimental nature of the program for the first two years. It is obvious from the statute as a whole that, except as they may be developed from the four types of programs approved for demonstration purposes in 1976 and 1977, there are no established standards of the Office of Alcohol Program Management (now Office of Alcoholism) with which either private or public facilities can comply in the other 54 counties.
In myopic concentration on the lack of funding, the petitioners claim, as was not asserted in Hardin, that the discrimination inherent in the experimental program is based on an unsustainable classification of wealth. (See Shapiro v. Thompson (1971) 394 U.S. 618, 633 [22 L.Ed.2d 600, 614, 89 S.Ct. 1322]; and In re Antazo (1970) 3 Cal.3d 100, 108-112 [89 Cal. Rptr. 255, 473 P.2d 999].) This approach disregards the fact that the Legislature prescribed among the mandatory standards, "(2) The office shall set maximum fees to be charged for participation in the program and shall require that each program make provision for persons who cannot afford such fees in order to enable such persons to participate in such programs." (§ 13201.5, part.) Presumably from the experience derived in the experimental counties, the programs adopted *1019 will provide for treatment of indigents. We reject the contention that the Legislature if it wishes to conduct an experimental program must conduct it and fund it in 58 counties or fail in its purpose.
Petitioners also suggest, as a further point not disposed of in Hardin, that they have an interest in not suffering unequal punishment with those convicted of similar offenses in the four demonstration counties. (See People v. Olivas (1976) 17 Cal.3d 236, 257 [131 Cal. Rptr. 55, 551 P.2d 375]; and People v. Lewis (1939) 13 Cal.2d 280, 282 [89 P.2d 388].) The latter case was distinguished in People v. McNaught, supra. There the court ruled that the provisions for protective custody in detoxification centers contained in section 647, subdivision (ff), did not render the criminal provisions of section 647, subdivision (f), invalid in counties where no such centers were set up. The court recognized that territorial uniformity was not mandated by the equal protection clause of the federal Constitution (31 Cal. App.3d at pp. 603-604). After reviewing the background of the legislation the court concluded: "Viewed in this statutory setting it is apparent that there is nothing arbitrary about the criteria for the establishment of facilities by means of which certain violators of section 647, subdivision (f), may be diverted out of the criminal process into a therapeutic setting. By consistent state policy their availability depends on the judgment of local authorities who, presumably, are most familiar with local conditions." (Id., p. 607, fn. omitted. See also People v. Superior Court (Colon), supra, 29 Cal. App.3d 397, 401.) With respect to People v. Lewis, the court stated: "Surely it does not require extended discussion to point up the difference between a statute which makes the maximum length of punitive confinement depend on the type of correctional facility maintained by the county, and section 647, subdivision (ff), which seeks to divert persons guilty of a particular victimless crime out of the criminal process, provided that the county has the facilities to furnish a more enlightened treatment than punishment." (31 Cal. App.3d at p. 610.)
Turning to the instant case we find that in a technical sense sections 13201.5 and 13352.5 do not solely affect the criminal punishment prescribed for one or more convictions of violation of section 23102. They are principally concerned with the administration and control of those who are licensed by the Department of Motor Vehicles to use the highways. In Hough v. McCarthy (1960) 54 Cal.2d 273 [5 Cal. Rptr. 668, 353 P.2d 276], the court upheld the power given the department to suspend the license of a person convicted of misdemeanor drunk driving. *1020 In answer to the contention that such a suspension constituted double punishment the court said, "Although there is an element of punishment involved when an administrative agency regulates conduct by means of suspending licenses, the language of the statutes, as pointed out above, shows that the Legislature intended to give both the department and the court power to impose suspensions. In effect, what the Legislature has done is to declare that a person upon his first conviction of misdemeanor drunk driving may be deprived of the privilege of driving a car unless the department as well as the court permits him to do so. As we have seen, the present statutes are less severe than the provisions for mandatory suspension or revocation which formerly existed in this state and which are found in some other jurisdictions, and we cannot properly hold that the legislative plan is unreasonable." (54 Cal.2d at p. 282.)
In Hough the court also pointed out: "Suspension or revocation of a driver's license without a prior hearing does not violate due process where the action is justified by a compelling public interest. [Citation.] Such a public interest in the immediate suspension of licenses of persons convicted of drunk driving is shown by the factors which the director has taken into consideration. The order suspending petitioner's license shows that the director relied upon the administrative determination that ordinary methods of persuasion have failed to stop the increase in accidents due to drunk driving and that the frequency of such accidents will be enhanced by increased congestion on the highways." (Id., p. 285. See also Dixon v. Love (1977) 431 U.S. 105, 113 [52 L.Ed.2d 172, 180-181, 97 S.Ct. 1723].) After reviewing then current statistics, the court continued, "The incidence of death and serious injury on the highways has undeniably assumed tragic dimensions and has been due in a significant degree to the effects of alcohol upon drivers. So long as the measures adopted do not amount to a substantial invasion of individual rights, society must not be prevented from seeking to combat this hazard to the safety of the public. [Citation.]" (Id., See also Anderson v. Cozens (1976) 60 Cal. App.3d 130, 143 [131 Cal. Rptr. 256]; Breithaupt v. Abram (1957) 352 U.S. 432, 439 [1 L.Ed.2d 448, 452, 77 S.Ct. 408]; and Stats. 1972, Res.Ch. 152, p. 3443, supra.) It is therefore questionable that the petitioners can claim a violation of uniform sentencing standards. The problem is one of the application of disparate administrative remedies, which are justified by the problems facing the Legislature and the executive branch of the government.
(6) In examining the discrepancy in treatment which results from the two-year experimental program in the light of equal protection standards, *1021 the following principles are governing: The right to drive a motor vehicle on the public highways is not such a fundamental right as to require strict scrutiny of any law which appears to classify the driving privileges of persons otherwise similarly situated, and to necessitate a compelling state interest before such classification may be justified. (Department of Motor Vehicles (Hardin), supra, 58 Cal. App.3d 936, 937. See also Dixon v. Love, supra, 431 U.S. 105, 112 [52 L.Ed.2d 172, 180]; and People v. Superior Court (Colon), supra, 29 Cal. App.3d 397, 401.) It does not violate equal protection of the laws for the Legislature to provide that local authorities may provide alternatives to the criminal justice system for those found in a public place under the influence of intoxicating liquor. (People v. McNaught, supra, 31 Cal. App.3d 599, 607; and People v. Superior Court, supra, 29 Cal. App.3d 397, 400-401.) (7) Territorial uniformity is not a constitutional requisite under the equal protection clause of the Fourteenth Amendment. (McGowan v. Maryland (1961) 366 U.S. 420, 427 [6 L.Ed.2d 393, 399-400, 81 S.Ct. 1101]; and Salsburg v. Maryland (1954) 346 U.S. 545, 550-552 [98 L.Ed. 281, 287-288, 74 S.Ct. 280].) Nor is it absolutely required by the provisions of the California Constitution. (Whittaker v. Superior Court (1968) 68 Cal.2d 357, 367-368, 370-372 [66 Cal. Rptr. 710, 438 P.2d 358]; People v. McNaught, supra, 31 Cal. App.3d 599, 603-604; and People v. Superior Court (Colon), supra, 29 Cal. App.3d 397, 400-401.) The test in Whittaker appears applicable here. There the court stated: "Legislative classification as to treatment and procedure within a state judicial system according to factors such as geographical area, population, or other relevant considerations, does not deny equal protection of the laws unless such classification is shown to be palpably arbitrary and without a sound basis in reason." (68 Cal.2d at p. 370.)
(3c) That the demonstration project is not palpably arbitrary is evidenced from the background studies on which it is based. That it has a sound basis in reason is clear from the fact that it is necessary to secure an analysis of the results of the proposed program before abandoning or modifying, statewide, the present deterrent effect of license suspensions on those convicted of driving while under the influence. Equal protection considerations will not preclude the legislative branch from prescribing experimental programs. (See Marshall v. United States (1974) 414 U.S. 417, 428-430 [38 L.Ed.2d 618, 627-628, 94 S.Ct. 700]; and McGinnis v. Royster (1973) 410 U.S. 263, 270 and 277 [35 L.Ed.2d 282, 288, 292, 93 S.Ct. 1055].) This is particularly true in the controversial field of alcoholism. (See Powell v. Texas (1968) 392 U.S. 514, 522-531, and 539-540 [20 L.Ed.2d 1254, 1261-1267, 1271-1272, 88 S.Ct. 2145], Black, J. concurring.)
*1022 Petitioners suggest that People v. McNaught, supra, 31 Cal. App.3d 397 and People v. Superior Court (Colon), supra, 29 Cal. App.3d 397, only approve distinctions based on territorial considerations when the local governing body is given the election, and that in this case, where the state has arbitrarily designated the areas for discriminatory treatment and has rejected Solano County's application to participate in the program, there is a true denial of equal protection. Here again they fail to recognize the experimental nature of the program, and the state's rational interest in determining whether participation in an approved program for the treatment of problem drinking or alcoholism will serve better than the suspension of a driver's license to ameliorate the problems caused by driving while under the influence of intoxicating liquor, and, if so, the most effective program for obtaining that result. They also fail to appreciate that there is nothing in the record to reflect that the authorized body was arbitrary in selecting the four counties it did.
(8) Finally petitioners point out that in defining fundamental interests entitled to equal protection under the California Constitution, the Supreme Court of this state exercises its "inherent power as a court of last resort independent of fundamental interest determinations which may be reached by the United States Supreme Court solely on interpretations of the federal Constitution. [Citation.]" (People v. Olivas, supra, 17 Cal.3d 236, 246.) If we were to disagree with Hardin and hold that the privilege of driving was a fundamental interest requiring strict scrutiny of any classification of a restriction on the exercise of the privilege, and a compelling state interest to justify that classification, we would still uphold the statute. Here the long-range purpose of the experimental, albeit discriminatory, program is, as was the purpose of the statute reviewed in Anderson v. Cozens, supra, "to inhibit intoxicated persons from driving on the highways [citations] and thus reduce the carnage and slaughter on California freeways and byways caused by drunk drivers [citations] which `now reaches the astounding figures only heard of on the battlefield' [citations]." (60 Cal. App.3d 130.) As in that case, there is a compelling state interest for the necessary distinction attendant to a demonstration experimental plan. Petitioners have not been denied equal protection of the laws under either the state or federal Constitution because they happened to be arrested and convicted in other than one of the four demonstration counties.

IV
(9) The trial court in its decision, and petitioners, in support of its judgment, have marshalled a long line of cases in support of the *1023 proposition that the provisions of subdivision (b) of section 13201.5, which provide for the two-year demonstration period in a limited number of counties, constitute either a general law which does not have uniform operation (Cal. Const., art. IV, § 16(a) (1974); and see former art. I, § 11), or is an invalid local or special statute because a general statute can be made applicable (id., subd. (b) (1966); and see former art. IV, § 25, subd. 33).[7]
Many of these cases depend on the proposition noted in Harbor Dist. v. Board of Supervisors (1930) 211 Cal. 271 [295 P. 6] where the court, after recognizing that certain special laws had been upheld where there was no general law on the subject, observed, "[I]n no instance have we found that, where a general law fully applicable and complete on the subject is in existence, a special law has been upheld." (211 Cal. at p. 278. See also Consolidated Printing & Pub. Co. v. Allen (1941) 18 Cal.2d 63, 64 [112 P.2d 884]. Note also Marsh v. Supervisors (1896) 111 Cal. 368, 371 [43 P. 975]; Turner v. County of Siskiyou (1895) 109 Cal. 332, 334 [42 P. 434]; and City of Pasadena v. Stimson (1891) 91 Cal. 238, 248 [27 P. 604]. Cf. People v. Mullender (1901) 132 Cal. 217, 222 [64 P. 299].) So here, the petitioners argue, that as in Marsh v. Supervisors, the statute, because it concludes, "This section shall be applicable in all counties *1024 commencing January 1, 1978," shows on its face that it deals with a subject on which a general statute can be made applicable. That analysis completely overlooks the legislative intent to conduct limited demonstrations with several types of programs before the effective implementation of the program under standards to be established by the Office of Alcohol Program Management, presumably on the basis of those demonstrations. The demonstration itself requires a comparison not only between the different types of programs in the four counties, but also with the comparative experience in the other 54 counties during the same period. By its nature, the demonstration, as distinguished from the ultimate program, cannot be conducted by a general law with uniform operation.
An analysis of the reasons behind the constitutional provisions fails to reflect that they compel an invalidation of the provisions under consideration. The clause requiring laws of a general nature to have uniform operation (art. IV, § 16(a)) was found in the 1849 Constitution of this state. It was construed as follows: "Its meaning, as has been repeatedly declared by the highest judicial tribunal in the State, is not that general laws must act alike upon all subjects of legislation, or upon all citizens and persons, but that they shall operate uniformly, or in the same manner upon all persons who stand in the same category, that is to say, upon all persons who stand in the same relation to the law, in respect to the privileges and immunities conferred by it, or the acts which it prohibits." (Ex parte Smith and Keating (1869) 38 Cal. 702, 710.) It must be conceded that the provisions enacted in 1975 destroy the uniformity which existed prior to January 1, 1976. Of themselves, however, they act uniformly on all persons convicted in counties classified according to the legislative mandate for the demonstration purposes. The issue, therefore, reverts to the reasonableness of that classification.
The policy behind the prohibition of local or special statutes was expressed in Denman v. Broderick (1896) 111 Cal. 96 [43 P. 516], as follows: "It is a matter of history that when the present constitution was adopted there was a great appreciation of the supposed evils which had arisen out of special and local legislation, and there was a strong purpose to prevent such evils in the future. Perhaps some other inconveniences and evils which arise from too great limitation of the legislative power in this respect were not fully anticipated or considered. At all events, the constitution is exceedingly prohibitory of the power to pass local and special laws; and this feature of the constitution should be kept in view *1025 by legislators, for a law passed in plain contravention of it  whether good or bad  cannot be upheld by the judiciary." (111 Cal. at p. 102.)
In Darcy v. Mayor etc. of San Jose (1894) 104 Cal. 642 [38 P. 500], the court had expressed the same conclusion, but it qualified it as follows: "Legislatures and courts are not at liberty to disregard a policy so plainly manifested in the fundamental law. But, while the sovereign will is thus plainly expressed in the fundamental law, the rule must not receive an interpretation too absolute. It will not be presumed that it was intended to deprive the legislature of all power to adapt its laws to the varying conditions of its inhabitants. From necessity it has been held that the legislature may classify in order that it may adapt its legislation to the needs of the people. If this cannot be done laws will not always bear equally upon the people. This classification, however, must be founded upon differences which are either defined by the constitution or natural, and which will suggest a reason which might rationally be held to justify the diversity in the legislation. It must not be arbitrary, for the mere purpose of classification, that legislation really local or special may seem to be general, but for the purpose of meeting different conditions naturally requiring different legislation. [Citation.]" (104 Cal. at pp. 645-646. See also Rainey v. Michel (1936) 6 Cal.2d 259, 268-271 [57 P.2d 932, 105 A.L.R. 148].)
Here, as we have seen, there is a rational and even compelling reason for legislation for a demonstration project, which by its nature cannot operate uniformly or be established generally throughout the state. It is not arbitrary but dependent on standards to be determined administratively in accordance with guidelines provided by the Legislature. (See People v. Monterey Fish Products Co. (1925) 195 Cal. 548, 556-559 [234 P. 398, 38 A.L.R. 1186].) For the reasons outlined in part III above we conclude that the program as enacted does not violate section 16 of article IV.
Our conclusion in that regard is buttressed by the general recognition that provisions of the two clauses of section 16 are deemed to have substantially the same meaning (see Rainey v. Michel, supra, 6 Cal.2d at p. 268), and that the provisions of clause (a) (formerly found in art. I, § 11) and of article I, section 7, subdivision (b) (formerly found in art. I, § 21) are considered as substantially the equivalent of the equal protection clause of the Fourteenth Amendment to the federal Constitution. (See Hayes v. Superior Court (1971) 6 Cal.3d 216, 223 [98 Cal. Rptr. 449, 490 P.2d 1137]; Serrano v. Priest (1971) 5 Cal.3d 584, 596, fn. 11 [96 *1026 Cal. Rptr. 601, 487 P.2d 1241]; Dept. of Mental Hygiene v. Kirchner (1965) 62 Cal.2d 586, 588 [43 Cal. Rptr. 329, 400 P.2d 321, 20 A.L.R.3d 361]; Gray v. Whitmore (1971) 17 Cal. App.3d 1, 20 [94 Cal. Rptr. 904]; and Paul v. Eggman (1966) 244 Cal. App.2d 461, 469-470 [53 Cal. Rptr. 237].) On that basis the conclusions expressed in part III, sustaining the legislation against attack on equal protection grounds, apply as well to the objections reviewed in this part. We, therefore, sustain the section against the attack predicated on the provisions of section 16 of article IV of the state Constitution.

V
The petitioners urged and the trial court determined that the unconstitutionality of the statute only invalidated the demonstrative nature of the program, and that those convicted in Solano County were entitled to the benefits which it is contemplated will be applied statewide commencing January 1, 1978. If we have erred in upholding the constitutionality of the section, we would still have to reverse the judgment for the error in so applying the statute.
In Hayes v. Superior Court, supra, 6 Cal.3d 216, the court was dealing with a general statute which established a procedure by which one committed to prison in California for a new offense can obtain relief from the harmful uncertainty of other outstanding California convictions as to which he has been granted probation with imposition or execution of sentence suspended. After finding that it was a denial of equal protection to deny a similar right to those newly imprisoned in another state, the court ruled as follows: "A statutory classification which arbitrarily excludes some but not all of those similarly situated in relation to the legitimate purposes of the statute does not necessarily invalidate the entire statute. [Citations.] In light of the purposes and history of a particular statute or an overall statutory scheme a reviewing court may correct a discriminatory classification by invalidating the invidious exemption and thus extending statutory benefits to those whom the Legislature unconstitutionally excluded. [Citations.]" (6 Cal.3d at p. 224. See also In re Kapperman (1974) 11 Cal.3d 542, 550 [114 Cal. Rptr. 97, 522 P.2d 657]; and Sykes v. Superior Court (1973) 9 Cal.3d 83, 92 [106 Cal. Rptr. 786, 507 P.2d 90].)
The foregoing principle is of no avail to petitioners in this case. If it is held unconstitutional and a violation of equal protection to conduct a demonstration program in four counties during 1976 and 1977 the only *1027 persons affected would be those convicted in these counties. The remaining provisions of the statute, by their terms, cannot be effective in 54 other counties, including Solano County until January 1, 1978. The case in that posture is like Marsh v. Supervisors, supra. There, the court, in response to a plea that the body of the primary election law be upheld, without the proviso limiting it to two counties, ruled as follows: "If we should do so, we would be imposing upon the whole state a law which it is clear the legislature intended to apply in only two counties, and which would not otherwise have passed. This we cannot do, as it would be nothing short of legislation." (111 Cal. at p. 372. See also People v. Monterey Fish Products Co., supra, 195 Cal. 548, 556.)
Moreover, there is no evidence to show that Solano County had an approved plan. A representative of the Solano County Mental Health Department testified that she participated in developing a proposal pursuant to the request for proposal sent out by the then Office of Alcohol Program Management. The proposal apparently complied with the requirements set forth in the request, and provision was made for financing the program with current grants and funds. The conclusion that compliance with the requirements for a proposal, or with the standards listed in part (a) of section 13201.5, rendered the Solano program an approved program fails to note the mandate of section (b) that the Office of Alcohol Program Management should approve several types of programs in the counties selected in order to prepare for effective implementation of the section statewide on January 1, 1978. As we have noted the Solano County plan was not even considered as adequate by the authority designated to select the demonstration programs (see fn. 5 above). If that authority unlawfully discriminated against Solano County redress would lie in action by the county not by the petitioners. The trial court erred in granting them the relief they sought.
The judgment is reversed and the case is remanded with directions to enter judgment for the Department of Motor Vehicles in each of the consolidated cases.
Elkington, J., and Lazarus, J.,[*] concurred.
*1028 A petition for a rehearing was denied August 22, 1977, and the following opinion was then rendered:
SIMS, Acting P.J.
By petition for rehearing, the plaintiffs assert that this court has overlooked its responsibility to reaffirm the independent nature of the California Constitution and its responsibility to separately define and protect the rights of California citizens under those provisions, despite conflicting decisions of the United States Supreme Court interpreting the federal Constitution. (See People v. Disbrow (1976) 16 Cal.3d 101, 114-115 [127 Cal. Rptr. 360, 545 P.2d 272]; People v. Longwill (1975) 14 Cal.3d 943, 951, fn. 4 [123 Cal. Rptr. 297, 538 P.2d 753]; and People v. Brisendine (1975) 13 Cal.3d 528, 548, 552 [119 Cal. Rptr. 315, 531 P.2d 1099].) In the exercise of independent judgment and for the reasons set forth in the opinion we have no reason to apply standards of equal protection other than enumerated in this case. Moreover by any standard the alleged favoritism in 4 counties cannot be translated into an authorized program in 54 other counties. Page Supp. 1
NOTES
[1] Section 13201.5 provides: "(a) A court may suspend the privilege of any person to operate a motor vehicle, for a period not exceeding six months, upon conviction of driving while under the influence of intoxicating liquor or under the combined influence of intoxicating liquor and any drug.

"In the alternative, and in addition to the provisions of subdivision (c) of Section 23102 and the provisions of Section 23102.3, a court may refrain from suspending such privilege if the person convicted of such offense has consented to participate in, for at least one year and in a manner satisfactory to the court, a public or private program for the treatment of problem drinking or alcoholism which, regardless of how it is funded, meets standards established by the Office of Alcohol Program Management, which shall include, but need not be limited to, the following:
"(1) Each program shall provide for close and regular supervision of the person, including face-to-face interviews at least once every other calendar week, regarding the person's progress in the program.
"(2) The office shall set maximum fees to be charged for participation in the program and shall require that each program make provision for persons who cannot afford such fees in order to enable such persons to participate in such programs.
"(3) Each program shall include a variety of treatment services for problem drinkers and alcoholics or shall have the capability of referring such persons to, and regularly and closely supervising such persons while in, appropriate treatment services for their problem drinking or alcoholism.
"In utilizing any such program, the court shall require periodic reports concerning the performance of the person participating in a program and the immediate report of any failure of the person to comply with the program's rules and regulations. If, at any time while participating in the program, the person fails to comply with the rules and regulations of the program, the court, upon finding such fact, shall immediately suspend, or order suspension or revocation of, the privilege of such person to operate a motor vehicle for the period prescribed by law.
"No person may be admitted into a program for the treatment of problem drinking or alcoholism pursuant to this section more than once.
"The provisions of this section afford a rehabilitative program for problem drinkers or alcoholics that is in addition to any other program or procedure relating to treatment of drinking drivers established in the criminal justice system, and the provisions of this section shall not be construed to restrict or supersede such programs or procedures, nor to prevent the future establishment of similar programs or procedures.
"Further, the provisions of this subdivision shall not be construed as requiring a court, upon a first conviction of a person for driving while under the influence of intoxicating liquor or under the combined influence of intoxicating liquor and any drug, to suspend the privilege of that person to operate a motor vehicle if the court finds that a program for the treatment of problem drinking or alcoholism is not appropriate for such a person and if such person has consented to participate in, and does participate in and successfully completes, a driver improvement program designated by the court, as provided in subdivision (c) of Section 23102.
"(b) In order to determine which types of programs can most effectively provide for treatment of persons convicted of such offenses, this section shall be implemented during the period from January 1, 1976, through December 31, 1977, on a demonstration basis in four or fewer counties deemed most appropriate for that purpose by the office. The office shall approve several types of programs in such counties in order to prepare for effective implementation of this section statewide. This section shall be applicable in all counties commencing January 1, 1978."
[2] Section 13352.5 provides in part: "(a) The department may not suspend or revoke, pursuant to subdivision (a), (c), or (e) of Section 13352 or any other provision of law, the privilege of any person to operate a motor vehicle upon a conviction or finding that the person was driving while under the influence of intoxicating liquor or under the combined influence of intoxicating liquor and any drug, if the court has certified to the department that such person has consented to participate for at least one year, and is participating, in a manner satisfactory to the court, in a public or private program for the treatment of problem drinking or alcoholism pursuant to the provisions of Section 13201.5 or, with respect to a first conviction of such offense, in a driver improvement program designated by the court, as provided in subdivision (c) of Section 23102...."
[3] Article IV, section 16, provides: "(a) All laws of a general nature have uniform operation. [¶] (b) A local or special statute is invalid in any case if a general statute can be made applicable."
[4] Article I, section 7, provides: "(a) A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws. [¶] (b) A citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens. Privileges or immunities granted by the Legislature may be altered or revoked."
[5] The record reflects that pursuant to the provisions of section 13201.5, the Office of Alcohol Program Management (see Stats. 1970, ch. 1021, § 1, adding Welf. & Inst. Code, §§ 19900-19906) since January 1, 1976. Office of Alcoholism (see Stats. 1975, ch. 1128, § 12, repealing the foregoing and § 13 enacting new §§ 19900-19906.5), canvassed the 58 counties for applications to participate in the demonstration program authorized by section 13201.5. Fifteen counties, including Solano County (pop. 169,941), responded. The office selected an 11-member advisory committee from 25 to 35 names submitted by its staff. The committee rejected 6 programs, including that of Solano County, outright, and from the remaining 9 selected Yuba (pop. 44,736), Kern (pop. 329,162), Ventura (pop. 376,430), and Santa Clara (pop. 1,064,714) counties for the demonstration.
[6] The report states in relevant part: "Data presented earlier in this report from the ASAP experience indicates that the rehabilitation activity does not strongly influence the drunk driving fatal accident problem or recidivism. In contrast, data from SR-160 and from research done for this report suggests that suspension/revocation activity substantially reduces accidents and convictions among drunk drivers during the interval of suspension. In addition, the use of limited or restricted drivers licenses have shown some promising findings.

"In view of these factors, it is thought that the efficacy of rehabilitative programs with regard to these types of drunk driving programs should be critically considered. It is altogether possible that vesting authority in the courts to impose rehabilitation in place of punitive sanctions may have a negative traffic safety impact in the sense that a countermeasure of questionable value is supplanting a countermeasure which may have positive effects on traffic crashes. Until rehabilitative modes are developed which prove effective in curbing the drinking driver crash problem, great caution must be exercised in attempting to expand rehabilitative modalities into statewide operational programs."
[7] See: Consolidated Printing & Pub. Co. v. Allen (1941) 18 Cal.2d 63, 68 [112 P.2d 884] (special procedure to control publication of delinquent tax list in Los Angeles County when already governed by effective general statute); Harbor Dist. v. Board of Supervisors (1930) 211 Cal. 271, 276-280 [295 P. 6] (Ventura County Harbor District Act held unconstitutional in light of existence of general Harbor Act of 1915); Marsh v. Supervisors (1896) 111 Cal. 368, 371-372 [43 P. 975] (primary election law, which by its terms was designed originally to apply uniformly throughout the state, rendered invalid by proviso limiting its application to two counties): Denman v. Broderick (1896) 111 Cal. 96, 103-106 [43 P. 516] (where municipalities have been classified on the basis of population an act attempting to create a class for the special purpose of designating the constitution of the election board, without reference to the existing classification by general law, is local and special and so unconstitutional and void); Bloss v. Lewis (1895) 109 Cal. 493, 496-500 [41 P. 1081] (portion of properly classified statute fixing county clerk's salary which purported to fix special probate fees invalid for lack of rational basis for classification); Turner v. County of Siskiyou (1895) 109 Cal. 332, 334-335 [42 P. 434] (special provision for witness' fees in one county invalid): Darcy v. Mayor etc. of San Jose (1894) 104 Cal. 642, 645-649 [38 p. 500] (cannot create a special classification of one municipality for the purpose of fixing policemen's salaries); Welsh v. Bramlet (1893) 98 Cal. 219, 224-226 [33 P. 66] (under proper classification for compensation cannot give officer a special power at his sole discretion to appoint deputies and make the county chargeable for their compensation): Dougherty v. Austin (1892) 94 Cal. 601, 620-623 and 632-634 [28 P. 834, 29 P. 1092] (a provision permitting boards of supervisors in but 20 counties to pay the salaries of deputies of county officers violates constitutional provisions for uniformity); and City of Pasadena v. Stimson (1891) 91 Cal. 238, 248-252 [27 P. 604] (requirement, applicable only to two classes of cities, that an effort to agree be made before commencing action in eminent domain violates provisions now found in art. IV, § 16).
[*] Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.